**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- X

XUE (HEIDI) FENG,

                 Plaintiff,

       -vs-

NOMURA SECURITIES INTERNATIONAL, INC.,

                 Defendant.

---------------------------------------------------------- X

Civil Action No. 1:24-cv-00467-VEC

**ORAL ARGUMENT REQUESTED**

## NOMURA SECURITIES INTERNATIONAL, INC.'S  REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Of Counsel:

Ellen M. Murphy
Howard M. Wexler
Ashley Casey

Dated: June 22, 2026

SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018-1405
(212) 218-5500
*Attorneys for Defendant*

326451888v.3

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT................................................................................................. 1

LEGAL ARGUMENT ......................................................................................................... 3

I.      PLAINTIFF'S DECLARATION AND RULE 56.1 STATEMENT ................................... 3

II.     PLAINTIFF'S NYLL RETALIATION CLAIM LACKS ANY MERIT........................... 3

III.    THERE ARE NO MATERIAL ISSUES OF FACT AS TO PLAINTIFF'S EQUAL
        PAY CLAIMS ......................................................................................................... 4

IV.     PLAINTIFF'S DISCRIMINATION CLAIMS FAIL ..................................................... 6

        A.      Plaintiff Cannot Establish a Prima Facie Case ......................................... 6

        B.      Plaintiff Cannot Show Any Discriminatory Animus .............................. 8

V.      PLAINTIFF'S RETALIATION CLAIMS ALSO FAIL ..................................................11

CONCLUSION.................................................................................................................. 12

326451888v.3

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Belfi v. Prendergast*,
191 F.3d 129 (2d Cir. 1999)..................................................................................................9

*Berrie v. Bd. of Educ. Of Port Chester-Rye Union Free Sch. Dist.*,
750 F. App'x 41 (2d Cir. 2018) ...........................................................................................3

*Boatright v. U.S. Bancorp.*,
2020 WL 7388661 (S.D.N.Y. Dec. 16, 2020) .....................................................................5

*Cestaro v. Prohaska*,
681 F. Supp. 3d 121 (S.D.N.Y. 2023)..................................................................................3

*Clark-Green v. N.Y.C. Dep't of Educ.*,
2022 WL 4643385 (E.D.N.Y. Aug. 2, 2022)........................................................................7

*Drury v. Waterfront Media, Inc.*,
2007 WL 737486 (S.D.N.Y. Mar. 8, 2007) .........................................................................5

*Forden v. Bristol Myers Squibb*,
63 F. App'x 14 (2d Cir. 2023) .............................................................................................5

*FTC v. Moses*,
913 F.3d 297 (2d Cir. 2019)................................................................................................6

*Gioia v. Forbes Media LLC*,
501 F. App'x 52 (2d Cir. 2012) .........................................................................................12

*Grahm v. Long Island R.R.*,
230 F.3d 34 (2d Cir. 2000)..................................................................................................8

*Griffin v. Ambika Corp.*,
103 F. Supp. 2d 297 (S.D.N.Y. 2000)..................................................................................8

*Huminski v. Corsones*,
396 F.3d 53 (2d Cir. 2005)..................................................................................................4

*Kauffman v. N.Y. Pres. Hosp.*,
762 F. Supp. 3d 309 (S.D.N.Y. 2025)..................................................................................6

*Lifranc v. N.Y.C. Dep't of Educ.*,
2010 WL 1330136 (E.D.N.Y. Apr. 6, 2010) .......................................................................8

326451888v.3

*Melman v. Montefiore Med. Ctr.*,
    98 A.D.3d 107 (1st Dep't 2012) ...................................................................................12

*Muhleisen v. Wear Me Apparel LLC*,
    644 F. Supp. 2d 375 (S.D.N.Y. 2009)...........................................................................11

*Owens v. City of N.Y. Dep't of Educ.*,
    2022 WL 17844279 (2d Cir. Dec. 22, 2022) ..................................................................8

*Viola v. Philips Med. Sys. of North Am.*,
    42 F.3d 712 (2d Cir. 1994)...........................................................................................10

**Statutes**

N.Y. Labor Law § 215(viii) ...................................................................................2, 3, 4

**Other Authorities**

Local Rule 56.1.............................................................................................................1, 3

*Mayor Adams Launches COVID-19 Booster Campaign, Announces Additional
    Flexibility for NYC Businesses, Parents*, NYC (Sept. 2, 2022),
    https://www.nyc.gov/mayors-office/news/2022/09/mayor-adams-launches-
    covid-19-booster-campaign-additional-flexibility-nyc#/0 (last visited June 22,
    2026) ..............................................................................................................................6

326451888v.3

## **PRELIMINARY STATEMENT**

Plaintiff Xue (Heidi) Feng's ("Plaintiff") Opposition to Nomura Securities International, Inc.'s ("Nomura" or the "Firm") Motion for Summary Judgment (the "Opposition") confirms that Nomura's motion should be granted.  The admitted or unrebutted record evidence demonstrates that:

- Sergey Polgul ("Polgul") was hired by Nomura as a Vice President in January 2022. (RSOF ¶66.)[1]

- Polgul had more work experience than Plaintiff.  (RSOF ¶¶17-21, 69-70, 72.)

- Plaintiff was advanced to a Vice President role, effective April 1, 2022, and at that time her salary was increased to the salary at which Polgul was hired.  (RSOF ¶¶60-61.)

- Not everyone at Nomura with a Vice President title received the same base salary and bonus.  (RSOF ¶¶75-76.)

- Following Plaintiff's complaint about Abhishek Roy ("Roy"), a member of Nomura's IT team, on or about October 18, 2022: (i) Plaintiff had a meeting with Michael Anthony ("Anthony"), Head of Nomura's Equities Digital Office ("EDO") group; (ii) Anthony spoke with Roy and instructed the entire Quant team to skip IT meetings going forward; and (iii) Nomura conducted an investigation.  (RSOF ¶¶79, 92, 101-102, 113, 116, 120-128, 140.)

- Plaintiff did not raise any new issues related to Roy following her October 2022 complaint. (RSOF ¶¶150-152,156-157.)

- When the EDO was formed in October 2022, the expectation was that all team members would work in the office every Tuesday, Wednesday and Thursday from 9:00 AM to 5:00 PM.  (RSOF ¶¶164-165.)

- Plaintiff was in the office substantially less than other EDO team members, irrespective of her medical appointments.  (RSOF ¶¶166-180, 207-209.)

- Plaintiff did not use sick time for her doctors' appointments, nor did Plaintiff request a leave of absence or other accommodation.  (RSOF ¶¶192, 194-195.)

- No one at Nomura told Plaintiff that she could not attend medical appointments.  (RSOF ¶¶196-197.)

---

[1] Nomura's Reply to Plaintiff's Response to Nomura's Local Rule 56.1 Statement of Undisputed Material Facts is cited herein as "RSOF ¶ __."

326451888v.3

- Aside from her attendance, Plaintiff exhibited other performance issues in fiscal year 2023. (RSOF ¶¶229, 231-239.)

- Plaintiff received a Partially Meets Expectations rating for fiscal year 2023, which took into account feedback from multiple individuals. (RSOF ¶¶229, 249.)

- Nomura decided to terminate Plaintiff's employment in or around May 2023 when the Firm was first discussing a reduction in force ("RIF"). (RSOF ¶¶287-289.)

- Nomura's RIF focused on the lowest performers in the Global Markets Division based on performance ratings. (RSOF ¶¶284, 286.)

Rather than addressing the undisputed evidence or the controlling case law, Plaintiff relies on speculation and unsupported theories, baselessly arguing that her Partially Meets Expectations performance review was a "sham" and that Nomura undertook a discriminatory and retaliatory crusade against her. Such tactics, however, cannot salvage claims that are legally and factually deficient.

**First**, Plaintiff does not even respond to Nomura's arguments with respect to the fallacy of her retaliation claim under the New York Labor Law ("NYLL")—because she cannot. Indeed, Plaintiff admits that she did not use any protected leave to state a viable claim.

**Second**, Plaintiff fails to raise any material issues of fact as to whether her compensation at Nomura was the product of unlawful sex-based discrimination, especially insofar as the record makes clear that Polgul was hired by Nomura for a more senior role, performed substantially different work, had more professional experience and tenure in the Vice President role at Nomura, and received a more favorable performance review than Plaintiff.

**Finally**, Plaintiff's gender discrimination and retaliation claims fail because she points to no evidence whatsoever of gender-based and/or retaliatory animus. The record, by contrast, shows that Plaintiff was in the office substantially less than her peers on the EDO team and exhibited a host of other performance-related issues which culminated into a Partially Meets Expectations performance rating for fiscal year 2023. The decision to include Plaintiff in the RIF was based on

2

326451888v.3

well-documented performance deficiencies and bears no relation to Plaintiff's gender or internal complaints. Conspiracy theories aside, Plaintiff cannot rebut Nomura's legitimate business reason for her termination.

For these reasons, and those set forth in Nomura's moving brief, summary judgment should be granted in Nomura's favor.

## **LEGAL ARGUMENT**

### **I.    PLAINTIFF'S DECLARATION AND RULE 56.1 STATEMENT**

Plaintiff's declaration, submitted with her Opposition, is a lengthy narration of Plaintiff's subjective disagreement with the record without citations to evidentiary support. This is entirely insufficient. A "conclusory contradiction of undisputed evidence in a self-serving affidavit, unsupported by other evidence, is not by itself sufficient to create a genuine dispute of material fact." *Cestaro v. Prohaska*, 681 F. Supp. 3d 121, 125 (S.D.N.Y. 2023).

Moreover, Plaintiff has failed to properly dispute several facts in Nomura's Rule 56.1 Statement of Undisputed Facts. Instead of relying on evidentiary support as Local Rule 56.1(c) requires, Plaintiff instead "denies knowledge or information regarding" 57 different statements of fact. (*See* RSOF ¶¶8, 11, 33, 44, 57-58, 88, 96-97, 109-110, 117-118, 129, 131-134, 136-139, 159, 230, 237, 242-244, 257, 260-266, 268, 272-273, 275, 278-280, 283-289, 291, 295-300.)     These facts should be deemed admitted for purposes of this motion. *See Berrie v. Bd. of Educ. Of Port Chester-Rye Union Free Sch. Dist.*, 750 F. App'x 41, 49-50 (2d Cir. 2018).

### **II.    PLAINTIFF'S NYLL RETALIATION CLAIM LACKS ANY MERIT**

To prevail on a retaliation claim under NYLL Section 215(viii), Plaintiff must plead a "legally protected absence." (Mem. at 28-29.)[2] Plaintiff admits, and the undisputed evidence

---

[2] Nomura's moving brief is cited herein as "Mem. at ___."

326451888v.3

shows, that she cannot do so.  Plaintiff did not use sick time, take a leave of absence, or utilize any accommodation in connection with her medical appointments.  (RSOF ¶¶190-195.)

Indeed, Plaintiff's Opposition does not even attempt to rehabilitate her NYLL retaliation claim.  (Opp. at 22-28.)[3] *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005) (summary judgment should be granted where "there is no genuine issue as to any material fact").

## III.    THERE ARE NO MATERIAL ISSUES OF FACT AS TO PLAINTIFF'S EQUAL PAY CLAIMS

Plaintiff's Opposition also fails to raise any issue of material fact as to her equal pay claims under the EPA and NYLL.

**First**, Plaintiff misconstrues the record to try to create the appearance of issues of fact where none exist.  At no time did Nomura "admit that it pays different wages to employees of the opposite sex" as Plaintiff alleges.  (Opp. at 18.)  Rather, the record makes clear that the "gender pay equity" comment next to Plaintiff's name in Nomura's base salary review was added by Debbi Herzig ("Herzig"), Nomura's Human Resources Business Partner, as *"just a flag, [or] a potential discussion point."*  (RSOF ¶269.)  Plaintiff was paid within the Vice President salary band for fiscal year 2023 and was identified as one of several employees, including men, who were below the new Vice President salary band for fiscal year 2024.  (RSOF ¶¶270-271; Murphy Decl. Ex. AAA.)

Nor did Anthony testify "that the recommendation was to increase" Plaintiff's compensation based on gender pay equity.  (Opp. at 18.)  Anthony actually testified—several times—that he was not party to any discussions relating to the base salary review, and he has no personal knowledge regarding Herzig's comment.  (Murphy Supp. Decl. at Ex. D, Anthony Dep. 89:24-90:6, 96:2-16, 98:23-99:21.)

---

[3] Plaintiff's opposition brief is cited herein as "Opp. at ____."

**Second**, Plaintiff concedes that Polgul held a more senior Vice President role from January 2022 to April 1, 2022.  (RSOF ¶¶24, 60, 66.)  It therefore follows that Plaintiff and Polgul did not "perform equal work on jobs requiring equal skill, effort, and responsibility" during this time, especially insofar as Plaintiff admits that the Vice President role comes with greater expectations. (RSOF ¶62)  *see Boatright v. U.S. Bancorp.*, 2020 WL 7388661, at *12 (S.D.N.Y. Dec. 16, 2020) (granting summary judgment where alleged comparator was a "superior" based on the organizational hierarchy).

**Third**, even though Plaintiff and Polgul shared the same Vice President title after April 1, 2022, their job responsibilities materially differed.  Plaintiff's argument that both she and Polgul built statistical models is misleading, as this is just a broad job description that fails to account for their specific responsibilities.  (RSOF ¶84) *see Drury v. Waterfront Media, Inc.*, 2007 WL 737486, at *3 (S.D.N.Y. Mar. 8, 2007) (granting summary judgment where both employees were "classified as 'Vice Presidents' and . . . a few of their responsibilities . . . were similar").  As the record demonstrates, Polgul's Vice President role "was very broad, covering a lot of risk modeling associated with portfolios of stock," while Plaintiff's role "focused on building predictive modeling for options."  (RSOF ¶85.)

***Finlly***, even if Plaintiff and Polgul are appropriate comparators for purposes of her unequal pay claims—they are not—Plaintiff concedes that Polgul had more years of work experience and a longer tenure as a Vice President at Nomura and other financial institutions than Plaintiff.  (RSOF ¶¶72, 24, 60, 66.)  These are well-recognized "factors other than sex" which Plaintiff does not dispute.  *See Forden v. Bristol Myers Squibb*, 63 F. App'x 14, 15 (2d Cir. 2023) ("[P]ermissible factors include[e] seniority, experience and performance").

326451888v.3

Plaintiff's attempts to challenge the relevancy of Polgul's prior work history are unavailing. (Opp. at 21.)  The record demonstrates that Polguls' work experience translated into greater "knowledge about best practices . . . [for] quantitative research . . . [and] understanding of some of the specifics . . . [of] risk modeling."  (RSOF ¶72.)  Plaintiff's subjective disagreement with Polgul's skillset or knowledge, without any supporting evidence, is insufficient to create issues of fact.  *See FTC v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019) ("[C]onclusory allegations or denials . . . are not evidence and cannot by themselves create a genuine issue of material fact").

## IV.    PLAINTIFF'S DISCRIMINATION CLAIMS FAIL

### A.    Plaintiff Cannot Establish a *Prima Facie* Case

Plaintiff's Opposition disregards the overwhelming evidence undermining her gender discrimination claims.  (Mem. at 13-20.)  Instead of responding to the host of legal arguments set forth by Nomura, Plaintiff instead chooses to focus on ***only one*** topic to argue that an inference of discrimination exists; namely, her in-office attendance compared to Polgul's.  Plaintiff's argument fails for several reasons.

**First**, Plaintiff overlooks the fact that Polgul



Plaintiff, by contrast, did not have any similar restrictions and was expected to be in the office every Tuesday, Wednesday, and Thursday when the EDO was formed in October 2022.  (*See id.*; RSOF ¶164.)

---

[4] Nomura respectfully asks the Court to take judicial notice of the end date of New York City's COVID-19 vaccination mandate, as this is a fact that is not subject to reasonable dispute. *See Kauffman v. N.Y. Pres. Hosp.*, 762 F. Supp. 3d 309, 313 n.1 (S.D.N.Y. 2025) ("The Court may take judicial notice of facts regarding COVID-19."); *Mayor Adams Launches COVID-19 Booster Campaign, Announces Additional Flexibility for NYC Businesses, Parents*, NYC (Sept. 2, 2022), https://www.nyc.gov/mayors-office/news/2022/09/mayor-adams-launches-covid-19-booster-campaign-additional-flexibility-nyc#/0 (last visited June 22, 2026).

326451888v.3

**Second**, Plaintiff admits she was in the office substantially less than Polgul. (RSOF ¶¶164, 172-180.)  Indeed, comparing Polgul's attendance records to Plaintiff's for the time period of November 1, 2022 to June 22, 2023 demonstrates:

- Excluding recorded holidays, vacation days and sick time, Polgul missed **10 Tuesdays, Wednesdays, and/or Thursdays**. (Murphy Decl. Ex. GG at NOMURA 000260 – NOMURA 000261.)

- Excluding recorded sick time, Polgul was in the office for less than eight hours on **eight Tuesdays, Wednesdays, and/or Thursdays**. (*Id*.)

- Excluding recorded holidays, vacation days and sick time, Plaintiff missed **17 Tuesdays, Wednesdays, and/or Thursdays**. (Herzig Decl. Ex. C at NOMURA 000257 – NOMURA 000258.)

- Excluding recorded sick time, Plaintiff was in the office for less than eight hours **on 49 Tuesdays, Wednesdays, and/or Thursdays**. (*Id.*)[5]

Plaintiff's Opposition therefore overlooks her habitual tendency to come into the office for only a few hours at a time. (*See id.*)  Plaintiff's flagrant non-compliance with Nomura's in-office requirement negates any possible inference of discrimination and explains why Plaintiff's attendance records were pulled for review.  *See Clark-Green v. N.Y.C. Dep't of Educ.*, 2022 WL 4643385, at *26 (E.D.N.Y. Aug. 2, 2022) ("Plaintiff's job performance [was found] to be unsatisfactory, which rebuts an inference of discrimination").

While Plaintiff alludes to the number of hours she worked remotely, the evidence demonstrates that Plaintiff's remote session log actually captured her machine activity, ***not*** when she was actively working. (Murphy Decl. Ex. E, at NOMURA 005347 to NOMURA 005351.)

**Finally**, Plaintiff's mischaracterizes Werner Stanzl's ("Stanzl") deposition testimony with respect to Polgul's attendance. (Opp. at 9-10.)  Stanzl testified that Polgul's absences on January

---

[5] Plaintiff was also absent eight days in October 2022, and of the four days she did come into the office, she was only there for eight hours on one day. (Herzig Decl. Ex. C at NOMURA 000257.)

326451888v.3

4, 5, 10, 11, and 12, 2023 were not included in his year-end performance review, because ***"[i]t's about the consistency of not coming to the office."*** (Murphy Supp. Decl. Ex. E, Stanzl Dep. 112:9-113:7.)  Polgul did not exhibit the same level of non-compliance as Plaintiff.  Moreover, Plaintiff testified that Polgul was working from Europe for at least part of this time due to the Federal Aviation Administration flight groundings on or about January 11, 2023.  (Murphy Supp. Decl. Ex. B, Pl. Dep. II 396:11-398:18.)

In sum, Plaintiff has failed to raise a triable issue of fact with respect to whether Plaintiff was "treated less favorably than" Polgul on the basis of her gender.  *Grahm v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000).

### B.    Plaintiff Cannot Show Any Discriminatory Animus

Nomura has articulated a legitimate, non-discriminatory reason for Plaintiff's termination; namely, an office-wide RIF which impacted the lowest performers across the Global Markets Division.  (Mem. at 18-19; RSOF ¶¶284, 286.)  Plaintiff's flawed arguments cannot show that Nomura's proffered reason was pretextual and motivated by gender-based animus. (Opp. at 11-17.)

**First**, while Plaintiff may disagree with her managers' assessment of her work performance, it is well settled that such disagreement "cannot standing on its own show that her employer's asserted reason for termination was" based on discrimination. *Griffin v. Ambika Corp.*, 103 F. Supp. 2d 297, 308-309 (S.D.N.Y. 2000) (internal quotes and citations omitted); *Owens v. City of N.Y. Dep't of Educ.*, 2022 WL 17844279, at *2 (2d Cir. Dec. 22, 2022) (rejecting subjective beliefs and affirming summary judgement).

Moreover, "the mere fact that [Plaintiff] had received . . . favorable ratings in the past does not alone raise an inference of pretext" for a termination that occurred months later.  *Lifranc v. N.Y.C. Dep't of Educ.*, 2010 WL 1330136, at *15 (E.D.N.Y. Apr. 6, 2010).

8

326451888v.3

**Second,** Plaintiff mischaracterizes Stanzl's testimony, baselessly arguing that his "shifting justifications" establish pretext. (Opp. at 14-15.) Stanzl consistently testified that it was Plaintiff's responsibility as the model's owner to address any data quality issues that were impacting her projects. (Murphy Supp. Decl. at Ex. E, Stanzl Dep. 92:24-94:4, 96:8-6.) This is a fact Plaintiff also admits. (RSOF ¶¶317-319.) While Stanzl and Anthony had weekly meetings with IT, the purpose of those meetings was to facilitate "long-term planning, not . . . to take care of urgent things," like data issues. (Murphy Supp. Decl. at Ex. E, Stanzl Dep. 96:11-97:6.) Moreover, as Stanzl testified, submitting a JIRA ticket is not an effective way to remediate an urgent data issue, because "[t]hey are too slow." (*Id.* at 97:7-13.)

Plaintiff's also severely overstates the impact of *Belfi v. Prendergast*, 191 F.3d 129 (2d Cir. 1999). (Opp. at 10, 15.) There, the court noted that defendant "had a different justification at every turn for why . . . [plaintiff's] salary was less than those of males," such that the shifting explanations "must have appeared to plaintiff like a thimblerig." (*Belfi*, 191 F.3d at 139.) This is certainly not the case here where Plaintiff's managers repeatedly found her work to be substandard and her in-office attendance contrary to Nomura's requirements.

**Third**, Plaintiff again twists the undisputed evidence by insinuating that Anthony removed *only her* from weekly IT meetings in October 2022. (Opp. at 2, 14.) This is not so. As Plaintiff seemingly concedes in her Opposition and the record confirms, only Anthony and Stanzl regularly attended weekly IT meetings after October 2022. (*See id.* at 14-15; RSOF ¶119.) The decision to forego a joint Quant and IT meeting was also communicated to Plaintiff via email. (RSOF ¶116.)

**Fourth**, as noted in Nomura's moving brief, the fact that Plaintiff was the only woman in the EDO group is insufficient to state a viable gender discrimination claim or to establish pretext. (Mem. at 18.)

9

**Fifth**, Plaintiff's allegation that the EDO team expanded after her termination is factually incorrect. (Opp. at 13.) As the record demonstrates, Plaintiff was terminated from employment with Nomura effective August 4, 2023. (RSOF ¶3.) More than three months later on or about November 30, 2020, Nomura hired a *female second-year analyst* to the EDO, which is a more junior role with a total compensation much lower than Plaintiff's. (RSOF ¶¶297-298.) Nomura did not add any other employees to the EDO until September 2024—*more than one year after Plaintiff's termination*—when a male transferred into the EDO as a Vice President from a different group within Nomura. (RSOF ¶¶3, 299.) In or around November 2024, Nomura hired an Executive Director to the EDO team, which is a more senior position than Plaintiff held. (RSOF ¶¶25, 300.) Under these facts, there is no evidence of pretext to call Nomura's legitimate business decisions into question. *See Viola v. Philips Med. Sys. of North Am.*, 42 F.3d 712, 718-19 (2d Cir. 1994) (affirming summary judgment where defendant hired a new employee 11 months later in the same "general area of responsibility," because there was no other evidence to support an inference of improper motive).

**Finally**, there is no evidence that Anthony harbored any animus toward Plaintiff. Anthony's written expectations for Plaintiff's role were unrelated to Roy's complaint about Plaintiff's "offensive" email. (Murphy Supp. Decl. at Ex. E, Stanzl Dep. 58:15-59:17; Ex. I.) To the contrary, Anthony provided Plaintiff with a list of position-specific expectations on November 16, 2022 because she had "several questions" about her role after the EDO was formed in October 2022. (Murphy Supp. Decl. at Ex. D, Anthony Dep. 197:6-23, 215:10-22; Murphy Supp. Decl. Ex. A, Pl. Dep. I 221:9-223:2.) Moreover, Plaintiff admits that no one at Nomura prevented her from attending doctors' appointments or taking sick days. (RSOF ¶¶196-197.)

10

## V.   PLAINTIFF'S RETALIATION CLAIMS ALSO FAIL

Plaintiff's Opposition also disregards Nomura's several arguments and undisputed facts

which warrant summary judgment on her retaliation claims, including:

- Plaintiff's internal complaint to Human Resources about Roy in October 2022 is too far attenuated from Nomura's decision to terminate her employment *approximately seven months later* in May 2023 to establish causal connection. (RSOF ¶283; Mem. at 22.)

- Nomura took Plaintiff's concerns about Roy seriously, acted promptly to address her concerns, and took further action to abate any future incidents.  (RSOF ¶¶92-157; Mem. at 22-23.)

- Plaintiff's work performance deteriorated *after* her internal complaint to Human Resources in October 2022.  (Mem. at 23-24.)

- Plaintiff's retaliation complaint against Anthony cannot constitute protected activity because Plaintiff alleged that Anthony retaliated against her for attending medical appointments, *not* that Anthony discriminated against her on the basis of any protected category.  (RSOF ¶¶245-246; Mem. at 24-25.)

- There is *no* evidence that Anthony had any knowledge of Plaintiff's retaliation complaint against him.  (RSOF ¶ 260; Mem. at 26-27.)

- The decision to terminate Plaintiff's employment occurred in May 2023, which *pre-dates* Plaintiff's response to the July 2023 survey regarding alleged discrimination. (RSOF ¶¶276-277, 283; Mem. at 27.)

Rather, Plaintiff attempts to convince this Court that Nomura undertook a retaliatory

crusade against her based on her own conspiracy theories and conclusory, self-serving testimony.

Nomura thoroughly discusses Plaintiff's distortion of the record and utter lack of evidence above.

*See supra* IV. B.[6]   Summary judgment is appropriate where, as is the case here, "[s]hort of

---

[6] Moreover, to the extent Plaintiff argues that Herzig acted with "retaliatory intent," such claim is meritless. (Opp. at 23-24.)  As the record demonstrates, Herzig neither decided Plaintiff's Partially Meets Expectations performance rating, nor selected Plaintiff for termination.  (RSOF ¶¶ 230, 287-288) *see Muhleisen v. Wear Me Apparel LLC*, 644 F. Supp. 2d 375, 388 (S.D.N.Y. 2009) ("Statements by non-decisionmakers are not sufficient to show pretext.")

326451888v.3

speculation, there is no evidence that" retaliation "played even a partial motivating role in the decision to terminate" Plaintiff. *Gioia v. Forbes Media LLC*, 501 F. App'x 52, 56 (2d Cir. 2012).

In sum, Plaintiff improperly asks this Court to sit as a super-personnel department and override Nomura's facially-neutral practices. *See Melman v. Montefiore Med. Ctr.*, 98 A.D.3d 107, 121 (1st Dep't 2012) (a reviewing court "should not sit as a super-personnel department that reexamines an entity's business decisions") (internal quotes and citations omitted). The law requires otherwise.

## CONCLUSION

For the foregoing reasons, Nomura respectfully requests that the Court grant its motion for summary judgment, dismiss Plaintiff's Second Amended Complaint with prejudice, and grant any other just, proper, and equitable relief.

Dated:  June 22, 2026

Respectfully submitted,

**SEYFARTH SHAW LLP**

*/s/ Ellen M. Murphy*

Ellen M. Murphy
Howard M. Wexler
Ashley Casey
620 Eighth Avenue
New York, New York 10018-1405
Tel: (212) 218-5500
Fax: (212) 218-5526
emurphy@seyfarth.com
hwexler@seyfarth.com
acasey@seyfarth.com

*Attorneys for Defendant*
*NOMURA SECURITIES INTERNATIONAL, INC.*

12

## LOCAL CIVIL RULE 7.1(c) WORD COUNT CERTIFICATION

Pursuant to Local Civil Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, I hereby certify that the foregoing Reply Memorandum of Law in Furter Support of Defendant's Motion for Summary Judgment complies with word-count limitations. The foregoing Memorandum of Law contains 3,496 words, not including the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates.

*/s/ Ellen M. Murphy*
Ellen M. Murphy

326451888v.3