UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X

XUE (HEIDI) FENG,

                Plaintiff,

        -against-

NOMURA SECURITIES
INTERNATIONAL, INC.,

            Defendant.

------------------------------------------------------- X

Case No. 1:24-cv-00467-VEC

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, Defendant Nomura Securities International, Inc. ("Defendant," "Nomura" or the "Firm") submits the following Reply to Plaintiff Xue (Heidi) Feng's ("Plaintiff") Response to Nomura's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1. (ECF Nos. 105 and 118).[1]

## RESPONSES TO NOMURA'S STATEMENT OF FACTS

### I. RELEVANT PARTIES

1.    Nomura is a financial services firm and global investment bank headquartered in New York City, New York.  (Herzig Decl. ¶ 5.)

    **Response**: Admits.

---

[1] The undisputed facts set forth herein are followed by citations to their support in the record.  Copies of all pleadings, deposition testimony, and exhibits cited herein are annexed to the accompanying Declarations of Ellen M. Murphy ("Murphy Decl." or "Murphy Supp. Decl.") and Debbi Herzig ("Herzig Decl."). Plaintiff Xue (Heidi) Feng's ("Plaintiff") deposition is referred to as "Pl. Dep. I" and "Pl. Dep. II."  Each of the other depositions in this action are referred to as "[Witness Last Name] Dep."  Nomura presents these facts as undisputed and in the light most favorable to Plaintiff for purposes of summary judgment only, and expressly reserves the right to challenge such facts at trial or in any other proceeding in this action.

2.    Plaintiff Xue (Heidi) Feng ("Plaintiff") is a former Vice President who worked in Nomura's Equities Digital Office ("EDO") group in New York.  (Pl. Dep. I 80:23-25; Pl. Dep. II 437:25-438:11; Anthony Dep. 33:17-25, 55:3-6; Murphy Decl. Ex. H, at NOMURA 000058.)

**Response**: Admits.

3.    Plaintiff was employed with Nomura from September 8, 2020 until her termination of employment, effective August 4, 2023.  (Pl. Dep. I 79:16-18, 108:17-22; Pl. Dep. II 601:25-602:6, 643:24-644:9.)

**Response**: Admits.

## II.  Relevant NOMURA Policies

4.    Nomura maintains an Equal Employment Opportunity Affirmation policy in its Employee Handbook which explicitly forbids, among other things, discrimination based on several protected classifications, including sex.  (Herzig Dep. 49:25-6; Murphy Decl. Ex. I, at NOMURA 006078 – NOMURA 006079.)

**Response**: Plaintiff refers to the Employee Handbook for its contents.

5.    Nomura also maintains an anti-discrimination and anti-harassment policy, which prohibits discrimination and harassment in the workplace based on, among other things, sex and mandates that all employees report instances of alleged discrimination or harassment. (Herzig Dep. 49:24-50:20; Murphy Decl. Ex. I, at NOMURA 006083 – NOMURA 006085.)

**Response**: Plaintiff refers to the above-cited exhibit for its contents but does not dispute that the document includes the information stated above.

6.    Nomura also maintains an anti-retaliation policy, which prohibits retaliation against any employee who, in good faith, reports an alleged violation of the Firm's policy prohibiting

2

discrimination or harassment.  (Pl. Dep. I. 101:10-24, 102:6-9; Herzig Dep. 49:24-50:20; Murphy Decl. Ex. I, at NOMURA 006084 – NOMURA 006085.)

**Response**:  Plaintiff refers to the above-cited exhibit for its contents but does not dispute that the document includes the information stated above.

7.     Nomura also maintains a bonus policy, which states in pertinent part:

> The determination as to whether an employee will receive a bonus and the amount of any bonus is within the sole and absolute discretion of the Firm's management and depends upon the performance of the Firm and the Employee's individual performance, among other things, all of which are in the Firm's sole discretion.

(Murphy Decl. Ex. I, at NOMURA 006096 – NOMURA 006097.)

**Response**:  Plaintiff refers to the above-cited exhibit for its contents but does not dispute that the document includes the information stated above.

8.     As part of Nomura's new hire orientation process in September 2020, all new hires, like Plaintiff, received a copy of Nomura's Employee Handbook.  (Pl. Dep. I 99:14-100:2.)

**Response**: Plaintiff does not dispute that as a new hire she received a copy of Nomura's Employee Handbook and denies knowledge or information about all other new hires.

9.     Plaintiff completed Nomura's new hire orientation process and received a copy of the Firm's Employee Handbook.  (Pl. Dep. I 99:14-17, 102:21-25.)

**Response**: Admits.

10.    Plaintiff acknowledged that she reviewed Nomura's Employee Handbook.  (Pl. Dep. 99:14-19.)

**Response**: Admits.

11.    Nomura trains New York employees on several policies contained in its Employee Handbook on an annual basis, including its policies regarding, among other things, anti-discrimination, anti-harassment, and anti-retaliation  (Pl. Dep. I 103:5-19, 104:10-14.).  ()

**Response**: Plaintiff does not dispute she attended the annual training regarding its policies regarding, among other things, anti-discrimination, anti-harassment, and anti-retaliation and denies knowledge or information as to other New York employees.

12. Plaintiff completed annual anti-discrimination and anti-harassment trainings during her employment with Nomura.  (Pl. Dep. I 103:5-19, 104:10-14.)

    **Response**: Admits.

13. Nomura operates on a fiscal year from April 1 to March 31.  (Herzig Dep. 45:10-12.)  For example, Nomura's fiscal year 2021 spanned April 1, 2020 through March 31, 2021; Nomura's fiscal year 2022 spanned April 1, 2021 through March 31, 2022, etc.  (*Id.*)

    **Response**: Admits.

### III. PLAINTIFF'S EDUCATIONAL AND EMPLOYMENT BACKGROUND

#### A.    *Plaintiff's Educational Background*

14. Plaintiff received a Bachelor's degree in finance from Tsinghua University in 2006.  (Pl. Dep. I. 73:5-22.)

    **Response**: Admits.

15. Plaintiff also received a Ph.D. in economics from the University of Illinois at Urbana-Champaign in 2016.  (Pl. Dep. I 70:14-71:9.)

    **Response**: Admits.

16. In 2023, while employed at Nomura, Plaintiff obtained the following professional licenses: FINRA Series 7,  FINRA Series 57, and SIE.  (Pl. Dep. I 73:23-74:14.)

    **Response**: Admits.

#### B.    *Plaintiff's Employment Background*

17. Plaintiff had a remote internship with McKinsey & Company in 2016.  (Pl. Dep. 75:2-11; Murphy Decl. Ex. J, at NOMURA 000051.)

**Response**: Admits.

18.     As an intern at McKinsey & Company, Plaintiff performed research on the real estate logistics industry, among other things.  (Pl. Dep. 84:21-85:6; Murphy Decl. Ex. J, at NOMURA 000051.)

**Response**: Admits.

19.     Plaintiff also held an internship with Tigress Financial Partners in New York.  (Pl. Dep. I 75:2-21.)

**Response**: Admits.

20.     Although Plaintiff did not recall when she interned with Tigress Financial Partners, she acknowledges that she left the investment bank when she received a job from JPMorgan in August 2017.  (Pl. Dep. I 75:2-76:23.)

**Response**: Admits.

21.     Plaintiff was employed as a Quantitative Research Associate at JPMorgan in New York from approximately August 2017 to August 2020.  (Pl. Dep. I 76:19-77:5, 86:3-7; Murphy Decl. Ex. J, at NOMURA 000051.)

**Response**: Admits.

22.     As a Quantitative Research Associate at JPMorgan, Plaintiff was responsible for, among other things, conducting quantitative research and analysis, developing statistical models, and generating reports.  (Pl. Dep. I 86:16-23.)

**Response**: Admits.

23.     Plaintiff voluntarily resigned from her employment with JPMorgan when she received a job offer from Nomura.  (Pl. Dep. I 77:24-78:2, 87:14-17.)

**Response**: Admits.

## IV. PLAINTIFF'S EMPLOYMENT WITH NOMURA

### A.    *Plaintiff's Hire As an Associate in Nomura's Equity Trading Group*

24.    Plaintiff was hired on September 8, 2020 as a full-time Quant Specialist at the Associate level in Nomura's Equity Trading Group. (Pl. Dep. I 79:16-21, 89:12-25, 108:17-25; Muchnik Dep. 62:15-21; Murphy Decl. Ex. K, at NOMURA 000001 – NOMURA 000006, Ex. L, at NOMURA 006035.)

**Response**: Admits.

25.    The Equity Trading Group includes the following corporate job titles, among others, in order of supervisory seniority: Managing Director, Executive Director, Vice President, and Associate. (Herzig Decl. ¶ 6; Murphy Decl. Ex. L, at NOMURA 006035.)

**Response**: Admits.

26.    Upon her hire, Plaintiff reported directly to Roman Muchnik ("Muchnik"), Managing Director and head of the Quant Specialists group. (Pl. Dep. I 94:19-95:13, 109:4-6; Muchnik Dep. 8:5-14; 26:16-24; Murphy Decl. Ex. L, at NOMURA 006035.)

**Response**: Admits.

27.    As a Quant Specialist at the Associate level, Plaintiff worked on the data analytics side of Nomura's Equity Trading Group and was responsible for, among other things, conducting quantitative research and building statistical models. (Pl. Dep. I 94:7-13; Muchnik Dep. 35:10-18, 35:25-36:3, 38:7-9, 66:14-17.)

**Response**: Admits.

28.    Plaintiff also worked on the Earnings Volatility Prediction Model and the Delta Impact Model for Nomura's Equity Trading Group. (Pl. Dep. I 95:14-23; Muchnik Dep. 37:3-16.)

**Response**:  Plaintiff does not dispute that, among other models, she worked on the Earnings Volatility Prediction Model and the Delta Impact Model for Nomura's Equity Trading Group.

6

29.    The Earnings Volatility Prediction Model is a project to predict the earning volatility that occurs when a company announces its earnings.  (Pl. Dep. 37:3-13.)

**Response**: Admits.

30.    The Delta Impact Model is another a statistical model.  (Muchnik Dep. 124:17-18.)

**Response**: Plaintiff does not dispute that, among other things, the Delta Impact Model is a statistical model.

31.    Plaintiff worked on the Earnings Volatility Prediction Model and the Delta Impact Model with Werner Stanzl, a former Executive Director at Nomura.  (Pl. Dep. I 95:6-96:3; Muchnik Dep. 37:2-16; Stanzl Dep. 7:21-8:2, 8:13-9:2, 16:9-25.)

**Response**: Admits.

32.    Stanzl had more seniority than Plaintiff.  (Muchnik Dep. 65:17-25, 129:6-10.)

**Response**: Admits.

33.    As a senior Quant, Stanzl also had more job responsibilities than Plaintiff.  (Muchnik Dep. 65:17-66:4.)

**Response**: Plaintiff denies knowledge or information regarding this statement.

**B.    *Plaintiff's Compensation as a Quant Specialist at the Associate Level***

34.    Plaintiff was hired at a base salary of $███████.  (Pl. Dep. II 419:4-9; Murphy Decl. Ex. K, at NOMURA 000001.)

**Response**: Admits.

35.    Plaintiff also received a $██████ discretionary bonus for fiscal year 2021.  (Pl. Dep. II 419:4-21; Murphy Decl. Ex. M.)

**Response**: Admits.

36.    Plaintiff understood that her discretionary bonus would be prorated for the first fiscal year in which she was employed with Nomura as her employment was for only half the fiscal year.  (Pl. Dep. I 90:2-12, 90:23-25.)

**Response**: Admits.

37.    For future years, Plaintiff understood that her discretionary bonus would be based on several factors, including Plaintiff's performance, Nomura's overall performance, and the performance of Plaintiff's group within the Firm.  (Pl. Dep. I 90:13-91:20.)

**Response**: Admits.

38.    Plaintiff understood that bonuses were to be paid in Nomura's sole discretion.  (Pl. Dep. I 90:21-24.)

**Response**: Admits.

39.    Had Plaintiff been employed with Nomura for the entirety of the 2021 fiscal year, Plaintiff's total compensation, including base salary and discretionary bonus, would have been $       .  (Pl. Dep. II 419:4-420:3; Murphy Decl. Ex. M.)

**Response**: Admits.

40.    In July 2020, prior to her hire, Plaintiff told Nomura that she would accept $        in total compensation.  (Pl. Dep. II 419:22-424:16; Murphy Decl. Ex. N, at NOMURA 002498 – NOMURA 002499.)

**Response**: Plaintiff does not dispute that she told Nomura that she would accept $        in total compensation but avers that she was not that happy.  Pl. Dep. II, 422:13-19.

### C.    *Stanzl Becomes Plaintiff's Direct Supervisor*

41.    Stanzl became Plaintiff's direct supervisor in or around early 2022.  (Pl. Dep. I:94:24-95:5; Pl. Dep. II 426:11-18; Stanzl Dep. 15:12-16:3.)

**Response**: Admits.

8

42.     Stanzl reported directly to Muchnik until approximately October 2022.  (Stanzl Dep. 15:12-16:8, 17:20-22, 18:5-7.)

**Response**: Admits.

### D.      *Plaintiff's Performance Review for Fiscal Year 2021*

43.     Nomura conducts performance reviews on a fiscal year basis.  (Pl. Dep. II 424:23-425:15; Muchnik Dep. 69:21-24, 144:5-12.)

**Response**: Admits.

44.     End-of-year performance reviews are generally prepared in February or March of each year.  (Muchnik Dep. 69:21-24; Herzig Dep. 21:25-22:18.)

**Response**: Denies knowledge or information as to this statement.

45.     Plaintiff received her year-end performance review for fiscal year 2022 in March 2022. (Pl. Dep. II 426:3-23; Murphy Decl. Ex. O, at NOMURA 000070 – NOMURA 000074.

**Response**: Plaintiff does not dispute that she received her year-end performance review for fiscal year 2022 in or about March 2022.

46.     Stanzl was Plaintiff's direct supervisor by March 2022.  (Pl. Dep. II 426:6-23.)

**Response**: Plaintiff does not dispute that Stanzl was Plaintiff's direct supervisor in March 2022.

47.     Stanzl provided the following comments on Plaintiff's end-of-year performance review for fiscal year 2022, among others:



(Pl. Dep. II 429:17-430:24; Murphy Decl. Ex. O, at NOMURA 000074.)

**Response**: Plaintiff refers to the above-cited exhibit for its contents but does not dispute that the document includes the information stated above.

48.    Stanzl also included comments in the "Year End Assessment Development Areas" section of Plaintiff's fiscal year 2022 year-end performance review.  (Pl. Dep. II 430:25-431:8; Murphy Decl. Ex. O, at NOMURA 000074.)

**Response**: Plaintiff refers to the end-of-year performance review for fiscal year 2022 for its contents.

49.    Stanzl's comments in the "Year End Assessment Development Areas" section read:



(Pl. Dep. II 431:5-432:9, 433:15-25; Murphy Decl. Ex. O, at NOMURA 000074.)

**Response**: Plaintiff refers to the above-cited exhibit for its contents but does not dispute that the document includes the information stated above.

50.    Plaintiff understood that these were areas in which Stanzl wanted to see Plaintiff develop. (Pl. Dep. II 431:5-432:9, 433:15-25.)

**Response**: Plaintiff does not dispute that Stanzl made those comments in her performance review regarding areas where he wanted to see her develop.

51.    Plaintiff received a Meets Expectations performance rating for fiscal year 2022.  (Murphy Decl. Ex. O, at NOMURA 000074.)

**Response**: Plaintiff does not dispute that she received a Meets Expectations performance rating for fiscal year 2022.

10

### E.    *Plaintiff's Compensation for Fiscal Year 2022*

52.    Plaintiff received a base salary of $▮▮▮▮▮ for fiscal year 2022. (Pl. Dep. II 434:20-25; Murphy Decl. Ex. P, at NOMURA 000008.)

**Response**: Admits.

53.    Plaintiff was also awarded a discretionary bonus of $▮▮▮▮▮ for fiscal year 2022. (Pl. Dep. II 435:2-13; Murphy Decl. Ex. P at NOMURA 000008.)

**Response**: Admits

54.    Plaintiff alleges that she told Muchnik that her discretionary bonus for fiscal year 2022 was lower than her expectation. (Pl. Dep. II 436:8-23.)

**Response**: Admits.

55.    Plaintiff alleges that she expected approximately $▮▮▮▮ more in her discretionary bonus amount for fiscal year 2022. (Pl. Dep. II 436:24-437:8.)

**Response**: Admits.

### F.    *Plaintiff Is Advanced to Vice President*

56.    Muchnik recommended Plaintiff for promotion to Vice President. (Pl. Dep. II 438:24-439:7; Stanzl Dep. 22:2-18; Murphy Decl. Ex. Q, at NOMURA 000059.)

**Response**: Admits.

57.    Muchnik drafted the Nomination Form for Plaintiff's advancement and asked Stanzl "to help . . . with the English." (Muchnik Dep. 113:10-114:19; Stanzl Dep. 22:2-18; Murphy Decl. Ex. Q, at NOMURA 000059.)

**Response**:  Plaintiff denies knowledge or information regarding this statement and refers to the deposition transcript of Muchnik for the contents of his testimony.

58.    Muchnik testified, "writing is not my strongest skill." (Muchnik Dep. 113:10-15.)

11

**Response**: Plaintiff denies knowledge or information regarding this statement and refers to the deposition transcript of Muchnik for the contents of his testimony.

59.    However, Stanzl thought it was too early for Plaintiff to be advanced to Vice President.  (Stanzl Dep. 22:2-12.)  Stanzl expressed this to Muchnik.  (Stanzl Dep. 22:2-14.)

**Response**:  Plaintiff disputes that Stanzl thought that it was too early for Plaintiff to be advanced to Vice President given the statements he made and information he provided to Muchnik about Plaintiff in support of Plaintiff's promotion to Vice President which included the major projects she worked, key accomplishments and areas of strength.  (Gerrald Decl. Ex. H, Ex. I).

**Nomura's Reply**:  Stanzl's testimony regarding his belief that it was too early for Plaintiff to be promoted is not inconsistent with the information he provided Muchnik in connection with Plaintiff's promotion, because, as Stanzl testified, he believed it was too early for Plaintiff to be advanced to Vice President not because of the progress she had shown in "working on . . . her models," but because she had no experience working on a trading floor.  (Stanzl Dep. 22:2-12.)

60.    Plaintiff was advanced to Vice President, effective April 1, 2022.  (Murphy Decl. Ex. H, NOMURA 000058.)

**Response**: Admits.

61.    As a result of her advancement to Vice President, Plaintiff's base salary increased to $██████, effective April 1, 2022.  (Pl. Dep. II 439:8-11; Murphy Decl. Ex. P, NOMURA 000008.)

**Response**: Admits.

62.    Plaintiff agreed that there are greater expectations for someone with a Vice President title compared to an Associate title at Nomura.  (Pl. Dep. II 439:21-25.)

**Response**: Plaintiff does not dispute that there are greater expectations for someone with a Vice President title compared to an Associate title at Nomura but avers that when she held the Associate title, she was already performing at the Vice President level and above (Muchnik Dep. 114:21-115:8; Gerrald Decl. Ex J, at NOMURA 004332).

**Nomura's Reply**: Nomura admits that Muchnik wrote to a colleague, who was helping him with the language for the supporting documentation for Plaintiff's promotion, that Plaintiff was performing at the Vice President level as Muchnik was trying to write a recommendation that would get Plaintiff promoted (Murphy Supp. Decl., Ex. C at Muchnik Dep. 115:2-16; Murphy Supp. Decl., Ex. H at NOMURA 004332), but that language was not included in the actual documentation Muchnik submitted for Plaintiff's promotion.  (Gerrald Dec. Ex. I.)

63.    Plaintiff continued to report directly to Stanzl after her promotion to Vice President. (Pl. Dep. II 440:2-5.)

**Response**: Plaintiff does not dispute that she continued to report to Stanzl for a period of time after her promotion to Vice President.

## V.  NOMURA'S REORGANIZATION IN OCTOBER 2022

### A.    *Nomura's Quant Specialists Under Muchnik Prior to October 2022*

64.    Prior to October 2022, Muchnik was the Managing Director of a group of Quant Specialists.  (Pl. Dep. I 109:13-110:13; Muchnik Dep. 8:10-19, 26:16-19; Murphy Decl. Ex. L, at NOMURA 006035.)

**Response**: Admits.

65.    The Quant Specialist group consisted of Stanzl, Plaintiff, Sergei Dzhosyuk ("Dzhosyuk"), Sergey Polgul ("Polgul"), Matt Clark ("Clark"), and Mathreya Sitaraman ("Sitaraman").  (Pl. Dep. I 109:13-110:13; Muchnik Dep. 26:16-28:4, 62:14-21; Murphy Decl. Ex. L, at NOMURA 006035.)

**Response**: Does not dispute that the Quant Specialist group consisted of the individuals listed above, and avers that the group also included Muchnik.

66.     Polgul was hired as a Vice President in Nomura's Equity Trading Group in January 2022.  (Pl. Dep. I 110:7-13; Pl. Dep. II 440:24-441:6; Muchnik Dep. 69:8-10, 71:17-22, 72:6-12; Anthony Dep. 238:10-16; Murphy Decl. Ex. L, at NOMURA 006035.)

**Response**: Admits.

67.     As a Vice President, Polgul was hired at a base salary of $███████.  (Murphy Decl. Ex. M.)

**Response**: Plaintiff refers to the above-cited exhibit for its contents but does not dispute that the document includes the information stated above.

68.     Polgul also received a discretionary bonus of $██████ based on performance for the 2022 fiscal year.  (Muchnik Dep. 76:21-23; Murphy Decl. Ex. M.)

**Response**: Plaintiff refers to the above-cited exhibit for its contents but does not dispute that the document includes the information stated above.

69.     Before  joining  Nomura,  Polgul  was  a  ███████████████████████████ ████████████████████████████████ (Herzig Decl. ¶ 7, Ex. A at NOMURA 000266; Muchnik Dep. 72:6-13.)

**Response**: Plaintiff refers to the above-cited exhibit for its content and while she does not dispute that the above-cited exhibit states that Polgul was a Vice President at JP Morgan from approximately February 2016 to November 2020, she disputes that it was the last position he held prior to joining Nomura.   The last position held by Polgul prior to his joining Nomura, was an ██ ████████████████ (Herzig Decl. ¶ 7, Ex. A at NOMURA 000266).

**Nomura's Reply:** Undisputed.  Nomura further states that the facts in Plaintiff's Response to Paragraph 69 are immaterial to this action.

70.    Polgul held several other positions before joining Nomura, including ███████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████  (Herzig Decl. ¶ 7, Ex. A at NOMURA 000266 – NOMURA 000267.)

**Response**: Plaintiff refers to the above-cited exhibit for its contents but does not dispute that the document includes the information stated above.

71.    As Anthony testified, "Polgul had many years of additional knowledge about best practices from quantitative research in terms of how to ensure that what he was developing was something that would be readily usable into production as well as his overall understanding of some of the specifics . . . that we have around risk modeling for the central risk book." (Anthony Dep. 236:3-11.)

**Response**: Plaintiff does not dispute that Anthony testified as such and refers to the deposition transcript of Anthony for the contents of his testimony but avers that Polgul's prior experience did not include risk modeling in equity, equity portfolio, equity trading, equity portfolio algo trading including factor models of equity, equity index, ETF or equity portfolios, timing risk, transaction cost, price impact, market microstructure, portfolio optimization, which experience Plaintiff had. (Herzig Decl. ¶ 7, Ex. A at NOMURA 000266; Gerrald Decl. Ex H, at NOMURA 001644 - NOMURA 001645; and Ex. I NOMURA 000059 to NOMURA 000060.

**Nomura's Reply:** Nomura disputes that Polgul's prior experience did not include risk modeling in equity, equity portfolio, equity trading, equity portfolio algo trading including factor

15

models of equity, equity index, ETF or equity portfolios, timing risk, transaction cost, price impact, market microstructure, portfolio optimization as not supported by the record.

72.    Plaintiff acknowledged that Polgul "had more work experience" than she did.  (Pl. Dep. II 440:24-441:4.)

**Response**: Plaintiff does not dispute that Polgul had more years of work experience, but avers that Anthony's curriculum vitae and job application do not indicate that he had experience in in risk modeling in equity, equity portfolio, equity trading, equity portfolio algo trading including factor models of equity, equity index, ETF or equity portfolios, timing risk, trading cost, market microstructure, portfolio optimization, which experience Plaintiff did have. (Herzig Decl. ¶ 7, Ex. A at NOMURA 000266; (Gerrald Decl. at Ex. K, NOMURA 006274-NOMURA 006275; Ex. H at NOMURA 001644 - NOMUIRA; and Ex. I at NOMURA 000059 - NOMURA 000060).

73.    Polgul also has two graduate-level degrees, including a Master of Science in physics from the Moscow Institute of Physics and a Master of Science in data analytics from the Georgia Institute of Technology.  (Herzig Decl. ¶ 7, Ex A at NOMURA 000265.)

**Response**: Plaintiff refers to the above-cited exhibit for its contents but does not dispute that the document includes the information stated above.

74.    Nomura utilizes base salary bands for its corporate titles.  (Murphy Decl. Ex. AAA, at NOMURA 006018.)  For fiscal year 2022, the base salary band for Vice President was between $███████ and $███████.  (*Id.*).

**Response**: Plaintiff refers to the above-cited exhibit for its contents but does not dispute that the document includes the information stated above.

75.    Plaintiff understood that not everyone at Nomura with a Vice President title received the same base salary.  (Pl. Dep. II 441:7-10.)

**Response**: Plaintiff does not dispute the statement above, but avers that she, as a female employee with a Vice President title did not receive the same base salary as Polgul, a male who held the same Vice President title, avers that Polgul and Plaintiff were "junior" quants within the EDO., and further avers that her compensation was flagged on a compensation chart prepared by Nomura as a matter to "Bring up to minimum/gender pay equity." (Gerrald Decl. Ex. L, at NOMURA 6018-6019; Ex. C, Anthony Dep. p. 73:18 –74:4.

**Nomura's Reply:** Nomura disputes that Plaintiff did not receive the same base salary as Polgul; Plaintiff's base salary was increased to $⬛⬛⬛ when she was promoted to Vice President, which is the same base salary Polgul received when he was originally hired by Nomura as a Vice President. (Murphy Decl. Ex. M; Ex. P, at Nomura 000008; Pl. Dep. II 439:8-11.) Nomura admits that in connection with a base salary review conducted in 2023 for fiscal year 2024, when the salary band for the Vice President title was increased, Herzig added the comment "Bring up to minimum/gender pay equity" next to Plaintiff's name on a spreadsheet just as "a flag, [or] a potential discussion point." (Herzig Dep. 154:2-156:21; Murphy Decl. Ex. L, at NOMURA 006035 – NOMURA 006039, Ex. AAA, at NOMURA 006018; Prahofer Dep. 86:16-87:7)

76.     Plaintiff also understood that not everyone at Nomura with a Vice President title received the same bonus. (Pl. Dep. II 441:11-14.)

**Response**: Plaintiff does not dispute the statement above but avers that her compensation was flagged on a compensation chart prepared by Nomura as a matter to "Bring up to minimum/gender pay equity." (Gerrald Decl. Ex. L, at NOMURA 6018-6019.

**Nomura's Reply:** Nomura admits that in connection with a base salary review conducted in 2023 for fiscal year 2024, when the salary band for the Vice President title was increased, Herzig added the comment "Bring up to minimum/gender pay equity" next to Plaintiff's name on a

17

spreadsheet just as "a flag, [or] a potential discussion point." (Herzig Dep. 154:2-156:21; Murphy Decl. Ex. L, at NOMURA 006035 – NOMURA 006039, Ex. AAA, at NOMURA 006018; Prahofer Dep. 86:16-87:7.)

77.    For fiscal year 2023, both Plaintiff and Polgul were paid within the base salary band for the Vice President title. (Murphy Decl. Ex. M, Ex. AAA, at NOMURA 006018.)

**Response**: Plaintiff refers to the above-cited exhibit for its contents and while she does not dispute that the document includes the information stated above, she avers that her compensation was flagged on a compensation chart prepared by Nomura as a matter to "Bring up to minimum/gender pay equity." (Gerrald Decl. Ex. L, at NOMURA 6018-6019).

**Nomura's Reply:** Nomura admits that in connection with a base salary review conducted in 2023 for fiscal year 2024, when the salary band for the Vice President title was increased, Herzig added the comment "Bring up to minimum/gender pay equity" next to Plaintiff's name on a spreadsheet just as "a flag, [or] a potential discussion point." (Herzig Dep. 154:2-156:21; Murphy Decl. Ex. L, at NOMURA 006035 – NOMURA 006039, Ex. AAA, at NOMURA 006018; Prahofer Dep. 86:16-87:7)

### B.    Formation of the EDO in October 2022

78.    In or around October 2022, Nomura underwent a reorganization and created the new EDO. (Pl. Dep. I 116:7-13, 213:17-214:4; Muchnik Dep. 26:16-19, 49:8-19; Anthony Dep. Murphy Decl. Ex. L, at NOMURA 006036.)

**Response**: Plaintiff does not dispute that the reorganization occurred in or around October 2022.

79.    Michael Anthony ("Anthony") was named the Head of Nomura's EDO. (Pl. Dep. I 116:2-6; Anthony Dep. 35:17-22; Murphy Decl. Ex. L at NOMURA 006036.)

**Response**: Admits.

18

80. In addition to Anthony, the following individuals were placed in Nomura's EDO in or around October 2022: Plaintiff, Stanzl, Polgul, and Vikram Aggarwal ("Aggarwal"). (Anthony Dep. 53:20-54:11; Murphy Decl. Ex. L, at NOMURA 006036.)

**Response**: Admits.

81. Stanzl remained Plaintiff's direct supervisor in the EDO. (Pl. Dep. I 114:22-115:10, 215:12-15; Stanzl Dep. 66:5-67:4.)

**Response**: Plaintiff does not dispute that Stanzl remained her direct supervisor in the EDO, and avers that she also reported to Anthony . Pl. Dep. I, 115:6-25; (Gerrald Decl. Ex. M at NOMURA 0000235; Murphy Decl. Ex. RR, at NOMURA 005264);

82. Stanzl reported directly to Anthony as of October 2022. (Stanzl Dep. 17:15-22; Murphy Decl. Ex. L, at NOMURA 006036.)

**Response**: Admits.

83. After the formation of the EDO, Plaintiff retained her Vice President title, and she continued to work on the same projects that she had previously been working on. (Pl. Dep. I 215:12-21, 216:12-16.)

**Response**: Admits.

84. To this end, the specific nature of Plaintiff's and Polgul's work in the EDO differed. (Anthony Dep. 84:5-10.)

**Response**: Plaintiff disputes that her and Polgul's work in the EDO differed and aver that under Anthony the primary job for both Plaintiff and Polgul in the EDO was the same, specifically, to build statistical models (Anthony Dep. 88:6-15).

85.     While "Polgul's work was very broad, covering a lot of risk modeling associated with portfolios of stock," Plaintiff's "role was focused on building predictive modeling for options." (Anthony Dep. 84:5-16.)

**Response**:  Plaintiff does not dispute that Anthony testified as such and refers to the deposition transcript of Anthony for the contents of his testimony.

### C.     Muchnik's Quant Specialists Group After October 2022

86.     After the October 2022 reorganization, Muchnik supervised a new group of Quant Specialists, including Dzhosyuk, Clark, and Sitaraman.  (Muchnik Dep. 67:18-22; Murphy Decl. Ex. L, at NOMURA 006036.)

**Response**: Does not dispute based upon information and belief.

87.     Muchnik's new group of Quant Specialists were responsible for building pricing models and supporting Nomura's trading desk by, among other things, making sure the pricing models performed properly.  (Muchnik Dep. 67:18-68:11.)

**Response**: Admits.

## VI. NOMURA ADDRESSES PLAINTIFF'S COMPLAINTS ABOUT ABHISHEK ROY

88.     Abhishek Roy ("Roy") was employed on Nomura's Data Analytics IT team. (Anthony Dep. 131:16-18; Muchnik Dep. 32:5-10; Stanzl Dep. 60:9-11.)

**Response**: Plaintiff denies knowledge or information that Roy was employed on Nomura's Data Analytics IT team and avers that, upon information and belief, Roy was employed on Nomura's GMIT (Global Markets IT Team).

89.     Nomura's Quants and IT team work collaboratively.  (Pl. Dep. I 161:24-162:4; Muchnik Dep. 32:18-25.)

**Response**: Plaintiff does not dispute that that Nomura's IT team is supposed to work collaboratively with Quants.

90.    Roy did not supervise Plaintiff's work.  (Pl. Dep. I 160:25-161:2, 161:14-16.)

**Response**: Plaintiff does not dispute that Roy did not supervise her work but avers that Roy was senior in title to Plaintiff and controlled the data needed for her project.  (Stanzl Dep. 65:18- 66:21).

**Nomura's Reply:** Nomura disputes the assertion that Roy controlled the data needed for Plaintiff's project as not supported by the record.  Stanzl testified that Roy controlled the data only "to a certain degree" and that senior management—not IT—determined priority of projects. (Murphy Supp. Decl., Ex. E at Stanzl Dep. 65:18-21, 98:24-99:13.)  Plaintiff testified that Varano confirmed that Roy did not have the ability to delete the data she needed for her projects.  (Murphy Supp. Decl., Ex. A at Pl. Dep. I 275:21-276:3).

91.    Roy and Feng were in different reporting lines at Nomura; thus Roy did not have any input into Plaintiff's compensation or year-end reviews.  (Pl. Dep. I 161:3-13; 161:24-162:4, 162:1-23.).

**Response**:  Plaintiff does not dispute that she and Roy were in different reporting lines at Nomura but avers that because Roy controlled the data she needed for her work, was responsible for data issues she had, which in turn impacted her year end review and accordingly her compensation.  (Stanzl Tr. 65:18-66:4; Gerrald Decl.at Ex. N at NOMURA 003993- NOMURA 004028; Gerrald Decl. At Ex. O at NOMURA 004029- NOMURA 004045).

**Nomura's Reply:**  Nomura disputes the assertions that Roy controlled the data Plaintiff needed for her work,  was responsible for data issues Plaintiff had, which in turn impacted her year-end review and accordingly her compensation, as not supported by the record.  Stanzl testified that IT controlled the data only "to a certain degree" and that senior management—not IT—determined priority of projects.  (Murphy Supp. Decl., Ex. E at Stanzl Dep. 65:18-21, 98:24-99:13.)  Plaintiff

testified that Varano confirmed that Roy did not have the ability to delete the data she needed for her projects.  (Murphy Supp. Decl., Ex. A at Pl. Dep. I 275:21-276:3.)  Plaintiff also admitted that it was her responsibility to resolve the data quality issues for her own projects at Nomura. (Pl. Dep. II 511:5-17; Murphy Supp. Decl., Ex. E at Stanzl Dep. 92:23-93:24, 96:8-97:12.) Plaintiff admits that the data quality issues she alleges would impact other employees' projects at Nomura, not just hers (Pl. Dep. I 266:3-7) yet she is unaware of anyone else complaining or discussing these alleged data quality issues. (Pl. Dep. I 266:8-20.)

### A.    *Muchnik Addresses Plaintiff's Concerns in Early 2022*

92.    In early to mid-2022, within weeks of Roy attending joint meetings between Nomura's IT and Quant Specialists teams, Plaintiff complained to Muchnik about Roy.  (Pl. Dep. I 151:6-152:7, 153:17-20, 155:22-25, 157:21-158:6; Muchnik Dep. 161:16-19; Murphy Decl. Ex. R, at NOMURA 004728.)

**Response**: Plaintiff does not dispute that beginning in early 2022, she complained to Muchnik about Roy's discriminatory conduct he engaged in against her during joint meetings between Nomura's IT and Quant Specialists teams.

93.    Among other things, Plaintiff stated that Roy acted disrespectfully towards her and did not refer to her by name in meetings and email correspondences.  (Pl. Dep. I 151:6-12, 151:23-152:4, 160:5-14; Muchnik Dep. 162:2-10.)

**Response**: Plaintiff admits that she complained about Roy's discriminatory conduct and how, among other things, he acted disrespectfully towards her and did not refer to her by name in meetings and email correspondences, which conduct was not displayed towards males.

94.    According to Plaintiff, Roy instead used pronouns when referring to her in meetings and email correspondences.  (Pl. Dep. I 151:6-12, 151:23-152:5, 160:5-14.)

**Response**: Plaintiff admits that she complained about Roy's discriminatory conduct and how he did not refer to her by name in meetings and email correspondences and instead used pronouns when referring to her in meetings and email correspondences, which conduct was not displayed towards males whom he addressed by name.

95.    After speaking with Plaintiff about her concerns, Muchnik attended the joint meetings between Nomura's IT team and the Quant Specialists at Plaintiff's request. (Pl. Dep. I 155:22-156:3.)

**Response**: Admits and avers that when Muchnik attended one of the joint meetings between Nomura's IT team and the Quant Specialists, Roy talked over Plaintiff when she was speaking and Muchnik told Roy, "Let Heidi speak." Pl. Dep. 155:22-156:7.

96.    Muchnik also had a conversation with Roy about his communication style and asked Roy to be "more mindful" and "respectful." (Pl. Dep. I 157:21-158:6; Muchnik Dep. 162:2-15, 164:19-165:6; Murphy Decl. Ex. R, at NOMURA 004729.)

**Response**: Plaintiff denies knowledge or information regarding this statement.

97.    Muchnik informed Plaintiff that he spoke with Roy on February 17, 2022. (Pl. Dep. I 157:21-159:9; Murphy Decl. Ex. R, at NOMURA 004729.)

**Response**: Plaintiff does not dispute that on February 17, 2022, Muchnik informed Plaintiff that he spoke with Roy but denies knowledge or information as to when that conversation occurred.

98.    Plaintiff acknowledges that "things got better" with Roy after Muchnik had a conversation with him. (Pl. Dep. I 156:22-157:2, 157:15-20, 159:11-18.)

**Response**: Plaintiff does not dispute that after Muchnik informed her that he had a conversation with Roy, things got better with Roy in terms of addressing her by name but avers that it was not for long (Pl. Dep. I, 156:25-157:2, Pl. Dep. I, 159:15-19).

23

99.    Although Plaintiff alleges that things with Roy were not better for "long," Plaintiff acknowledges that she did not speak with Muchnik again to address her concerns.  (Pl. Dep. I 159:11-23, 162:5-162:25.)

**Response**: Plaintiff disputes that she did not speak with Muchnik again to address her complaint about Roy and avers that she did complain to Muchnik again about Roy on October 18, 2022 (Pl. Dep. I, 162:12-19).

**Nomura's Reply:** Nomura admits that Plaintiff "copied" Muchnik on the email she sent on October 18, 2022 in which she complained that Roy interrupted her or wouldn't let her speak on the October 18 2022 call, but Plaintiff admits she did not complain to Muchnik in-person about Roy between early to mid-2022 and October 18, 2022.  (Pl. Dep. I 162:12-19.)

100.    Plaintiff did not speak to Muchnik again about Roy until she cc'd him on an email correspondence on October 18, 2022.  (Pl. Dep. I 162:12-163:25.)

**Response**:  Plaintiff disputes that she did not speak with Muchnik again to address her complaint about Roy and avers that she did complain to Muchnik again about Roy on October 18, 2022 and admits that she cc'd him on an email correspondence on October 18, 2022 (Pl. Dep. I, 162:12-19).

**Nomura's Reply:** Nomura admits that Plaintiff "copied" Muchnik on the email she sent on October 18, 2022 in which she complained that Roy interrupted her or wouldn't let her speak on the October 18 2022 call, but Plaintiff admits she did not complain to Muchnik in-person about Roy between early to mid-2022 and October 18, 2022.  (Pl. Dep. I 162:12-19.)

### B.    *Nomura Addresses Plaintiff's October 2022 Complaint About Roy*

101.    According to Plaintiff, Roy interrupted her while speaking during a joint IT and Quants Specialist meeting on October 18, 2022 (the "October 18, 2022 meeting").  (Pl. Dep. I

173:21-174:6; Herzig Dep. 72:23-73:16; Murphy Decl. Ex. S, at NOMURA 000219, Ex. T, at NOMURA 000220.)

**Response**: Admits.

102.    Plaintiff alleges that Roy asked her whether she had anything to say at the end of the October 18, 2022 meeting.  (Murphy Decl. Ex. T, at NOMURA 000220).

**Response**: Plaintiff does not dispute that Roy asked her whether she had anything to say at the end of the October 18, 2022 meeting, but avers that was after he interrupted her when she was talking.  He let other male quants speak, but did not let her speak and did not address her until the end of the meeting.  (Pl. Dep. I 173:21-174:6.

103.    The October 18, 2022 meeting was held via Webex.  (Murphy Decl. Ex. S, at NOMURA 000219, Ex. T, at NOMURA 000220.)

**Response**: Admits.

### 1.    Plaintiff's Email to Roy and Others

104.    On October 18, 2022, Plaintiff sent an email correspondence to Roy, stating, in pertinent part:

> "I was about to answer Marina's question, talk about the earnings vol release in productions this Thursday and how Donal should pull decile rank by ratio from designated table. However, I got interrupted a few times and did not get the chance to talk about the earn vol release. Thus, I have had sent a separate email to you, Edgar, Donal and Werner in order to explain the matter.
>
> In order to ensure professional conversations and efficient communications in the Data Coordination meeting, please let me answer the question and convey meaningful information (it only takes a couple of sentences), instead of letting me talk in the very end of the meeting. Thank you."

(Pl. Dep. I 245:16-246:15; Murphy Decl. Ex. U, at NOMURA 003326.)

**Response**: Admits.

105.   Plaintiff cc'd Muchnik, Anthony, Stanzl and Jason Varano ("Varano"), the Co-Head of Equity Trading in the Americas, on her October 18, 2022 email correspondence to Roy. (Pl. Dep. I 245:16-246:24; Anthony Dep: 26:20-22.)

**Response**: Admits.

106.   Roy responded to Plaintiff's email correspondence on October 18, 2022.  (Murphy Decl. Ex. U, at NOMURA 003325.)

**Response**: Admits.

107.   Among other things, Roy apologized to Plaintiff, cc'd Marina Voynova ("Voynova"), a member of Nomura's IT team, who ran the October 18, 2022 meeting, and explained based on how the meeting is structured that Plaintiff's turn to speak as a quant was at the end of the meeting.  (Murphy Decl. Ex. U, at NOMURA 003325; Pl. Dep. I 247:5-248:8; Pl. Dep. II 565:8-17.)

**Response**: Plaintiff refers to the above-cited exhibit for its contents and while Plaintiff does not dispute that the document includes the information stated above, avers that Plaintiff was informed by Werner  that there was no rule that quants can only speak at the end of the meeting (Pl. Dep. 168:16-169:10).

108.   Marina emailed Plaintiff on October 19, 2022, stating, in pertinent part:

"Heidi, I just saw this thread and I feel really bad that you felt that we deliberately interrupted you multiple times during yesterday's call.

I can assure you it was not intentional.

I, for instance, did not hear you speak until Abhishek asked you something at the end of the call.

Is it possible your line was muted? Or low bandwidth connection glitch? Or, from what I have repeatedly noticed, Webex "silences" people when multiple people speak at the same time. And it happened to me too on other calls, when I try to say something only to hear someone talking over me. I normally catch these only if I see it on the video or if I see a blue box around the person's name. . . .

I am going to ask everyone to turn on their video for the calls to avoid this situation in the future. At least that way we can see who is trying to engage in the conversation. Otherwise you can ping us in the Symphony group chat or send a chime there. I will speak about this on our 11:30 call today."

(Pl. Dep. I 256:4-258:18; Murphy Decl. Ex. U, at NOMURA 003325.)

**Response**: Plaintiff does not dispute that the document includes the information stated above and refers to the above-cited exhibit for its contents but disputes that her line was muted which was confirmed by others who said that they heard Plaintiff's voice.( Pl. Dep. I, 168:7-69:5, 248:18-249:8)

109.    After Plaintiff raised her concerns about the October 18, 2022 meeting, Muchnik called Voynova and asked her what happened.  (Muchnik Dep. 168:16-169:5, 171:3-19, 195:5-23.)

**Response**: Plaintiff denies knowledge or information regarding this statement.

110.    Voynova did not confirm Plaintiff's account of events.  (Muchnik Dep. 171:12-19.)

**Response**: Plaintiff denies knowledge or information regarding this statement.

111.    Muchnik also testified that he believes the incident at the October 18, 2022 meeting was a miscommunication, as something similar happened to him.  (Muchnik Dep. 168:16-169:5.)

**Response**: Plaintiff refers to the deposition transcript of Muchnik for the contents of his testimony.

112.    According to Muchnik, people talked over him during a meeting because his sound did not come through.  (Muchnik Dep. 168:16-169:5.)

**Response**: Plaintiff refers to the deposition transcript of Muchnik for the contents of his testimony.

27

**2.      Plaintiff Speaks with Anthony, and Anthony Takes Action**

113.    Plaintiff had a meeting with Anthony on or about October 19, 2022 after he saw her October 18, 2022 email correspondence to Roy.  (Pl. Dep. I 248:2-17, 260:2-22; Anthony Dep. 138:2-18.)

**Response**: Admits.

114.    During this meeting, Anthony told Plaintiff that she could file a complaint with Human Resources.  (Pl. Dep. I 253:10-254:7.)

**Response**: Plaintiff does not dispute that Anthony told her that she could file a complaint with Human Resources and avers that she filed another complaint against Roy with Human Resources  (Pl. Dep. I 173:4-174:19; Herzig Dep. 72:23-73:16; Murphy Decl. Ex. S, at NOMURA 000219, Ex. T, at NOMURA 000220).

115.    Anthony also asked Plaintiff whether she would like him to separate her from Roy, which Plaintiff declined.  (Pl. Dep. I 253:10-254:13.)

**Response**: Plaintiff does not dispute that she declined and avers that she told Anthony that she can get along with people. (Pl. Dep. I, 254:8-21).

116.    After their meeting, Anthony sent Plaintiff an email correspondence on October 19, 2022, stating, in pertinent part:

> "Just wanted to let you know I've spoken to Abhishek just now. Next steps, as we discussed, should be to connect regularly on how we think things are going to ensure we don't have any slip ups/regression going forward. Additionally (Werner for you too) I've mentioned to him that we'll have the quant team skip these meetings going forward and we'll set up another in person weekly prioritization meeting with them to both discuss what's in flight and also what's in the hopper. Also if you guys wouldn't mind, please cc me in on the correspondence with this team for the next couple weeks just so I can see how the group collectively is working."

(Pl. Dep. I 249:9-251:18; Anthony: 238:19-25; Murphy Decl. Ex. V, at NOMURA 004050.)

28

**Response**: Plaintiff refers to the above-cited correspondence for its contents but does not dispute that Anthony sent the email on October 19, 2022  and that the document includes the information stated above.

117.    In addition to speaking with Roy, Anthony also spoke with Roy's supervisor and escalated Plaintiff's concerns to Human Resources.  (Anthony Dep. 138:2-139:25, 141:3-6, 155:2-19.)

**Response**: Plaintiff denies knowledge or information regarding this statement.

118.    Anthony also instructed the entire Quant team to skip the IT meetings going forward.  (Pl. Dep. I 251:15-18; Murphy Decl. Ex. V, at NOMURA 004050.)

**Response**: Plaintiff denies knowledge or information as to whether Anthony instructed the entire Quant team to skip the IT meetings going forward and, moreover, the email was not addressed to the entire Quant team, but was only addressed to Plaintiff, with a copy to Stanzl.

119.    After October 18, 2022, Nomura's IT and Quant teams had separate meetings, and only Anthony and Stanzl attended the meetings with IT.  (Stanzl Dep. 53:20-55:7.)

**Response**: Plaintiff disputes that after October 18, 2022, Nomura's IT and Quant teams had separate meetings that only Anthony and Stanzl attended because there were continued meetings with members of each of Nomura's IT and of Quant teams, but Plaintiff was excluded from those meetings.  For example, on December 7, 2022 and June 21, 2023, members of Nomura's IT and Quant teams attended a data analytics weekly coordination meeting at 11 am ET. (Gerrald Decl. Ex. HH, at NOMURA 005022- NOMURA 005023; and NOMURA 001494 – NOMURA 001497).

**Nomura's Reply:** Nomura admits that one other member of Nomura's Quant team, in addition to Anthony and Stanzl, was invited to one joint meeting with IT on December 7, 2022

(Gerrald Dec., Ex. HH at NOMURA 005022 - NOMURA 005023), but disputes that Plaintiff was excluded from meetings or that Nomura's IT and Quant team members, other than Anthony and Stazl, attended a meeting on June 21, 2023 as not supported by the record.

### 3. Human Resources' Investigation

120. After the October 18, 2022 meeting, Plaintiff also contacted Lin Li ("Li") in Nomura's Human Resources department. (Pl. Dep. I 172:6-18, 173:4-8; Herzig Dep. 67:13-22.)

**Response**: Admits.

121. Plaintiff spoke with Li on October 18, 2022. (Pl. Dep. I 173:4-8, 173:21-24; Herzig Dep. 67:25-68:11, 69:19-22; Murphy Decl. Ex. S, at NOMURA 000219.)

**Response**: Admits.

122. Plaintiff stated that ███████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████ (Murphy Decl. Ex. S, at NOMURA 000219.)

**Response**: Plaintiff does not dispute the statement above, but avers that the situation did not improve for long (Pl. Dep. I, 156:25-157:2, Pl. Dep. I, 159:15-19)

123. Plaintiff also stated that she ████████████████████████ ████████████████████████ (Pl. Dep. I 174:20-175:5; Herzig Dep. 67:13-22, 71:18-24; Murphy Decl. Ex. S, at NOMURA 000219.)

**Response**: Plaintiff does not dispute that she presented ██████████████ which was her complaint about Roy. (Pl. Dep. I 173:4-174:19; Herzig Dep. 72:23-73:16; Murphy Decl. Ex. S, at NOMURA 000219, Ex. T, at NOMURA 000220).

124. Plaintiff stated that she ██████████████████ (Pl. Dep. I 175:6-12; Herzig Dep. 71:18-24.)

**Response**: Plaintiff does not dispute she told Herzig that she ███████████████████████, but avers that subsequently, Herzig learned about Plaintiff's complaint against Roy which was forwarded to HR.  Murphy Decl. Ex. S, at NOMURA 000219-000221; and Murphy Decl. Ex. V, at NOMURA 004050

125.    On October 19, 2022, Plaintiff had a second meeting with Li and Debbi Herzig ("Herzig"), Nomura's Human Resources Business Partner.  (Herzig Dep. 8:11-22, 70:22-71:24, 73:17-21; Murphy Decl. Ex T, at NOMURA 000220.)

**Response**: Admits.

126.    Plaintiff told Li and Herzig that ██████████████████████

███████████████████████████████████████

███████████  (Murphy Decl. Ex T, at NOMURA 000220.)

**Response**: Admits.

127.    Plaintiff also told Li and Herzig that ████████████████████████ (Murphy Decl. Ex T, at NOMURA 000221.)

**Response**: Plaintiff does not dispute that █████████████████████████

128.    Plaintiff disclosed ████████████████ at the very end of the meeting with Li and Herzig.  (Herzig Dep. 75:25-76:9.)

**Response**: Admits.

129.    As part of Human Resources' investigation, ████████████████████ ████████  (Herzig Dep. 76:14-20; 79:18-80:17; Murphy Decl. Ex T, at NOMURA 000222.)

**Response**: Plaintiff denies knowledge or information regarding this statement.

130.    Stanzl was present for the October 18, 2022 meeting.  (Pl. Dep. I 176:2-11; Herzig Dep. 80:6-7.)

**Response**: Admits.

131.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

(Herzig Dep. 80:6-9.)

**Response**: Plaintiff denies knowledge or information regarding this statement.

132.  With respect to the order of the joint meetings, ▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Herzig Dep. 80:6-
11, 88:3-7; Stanzl Dep. 53:20-54:24; Murphy Decl. Ex T, at NOMURA 000223.)

**Response**: Plaintiff denies knowledge or information regarding this statement.

133.  Stanzl also told Herzig that he found Roy's communication style to be challenging and that he has been interrupted "many times" by Roy.  (Herzig Dep. 80:6-17; Stanzl Dep. 55:16-23; Murphy Decl. Ex T, at NOMURA 000223.)

**Response**: Plaintiff denies knowledge or information regarding what Stanzl told Herzig, but avers that during the meetings she attended with the IT group, Roy treated Plaintiff, the only female quant in the group, differently than he treated the male quants (Feng Tr. 154:11-155:16).

134.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Herzig Dep. 80:6-17;
Murphy Decl. Ex T, at NOMURA 000224.)

**Response**: Plaintiff denies knowledge or information regarding this statement.

135.  Muchnik was not present at the October 18, 2022 meeting; however, ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Pl. Dep. I 175:17-21, 176:2-11.)

**Response**: Admits.

136.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ (Muchnik Dep. 198:20-23; Murphy Decl. Ex. T, at NOMURA 000224.)

**Response**: Plaintiff denies knowledge or information regarding this statement.

137.    Muchnik also testified that he personally had prior issues with Roy.  (Muchnik Dep. 198:20-23.)

**Response**: Plaintiff denies knowledge or information regarding this statement and refers to the deposition transcript of Muchnik for the contents of his testimony.

138.    ██████████████████████████████████████████

██████████████████████████████████ (Herzig Dep. 82:18-23.)

**Response**: Plaintiff denies knowledge or information regarding this statement.

139.    Anthony was already aware of what happened at the October 18, 2022 meeting. (Herzig Dep. 83:2-5.)

**Response**: Plaintiff denies knowledge or information regarding this statement.

140.    ██████████████████████████████████████████

████████████ (Herzig Dep. 79:18-80:21.)

**Response**: Plaintiff disputes this statement and avers that Human Resources failed to corroborate Plaintiff's complaint because it did not conduct interviews of witnesses identified by Plaintiff who attended the meeting held on October 18, 2022 when Roy engaged in the conduct complained of.  (Pl. Dep. I, 176:5-11, Murphy Decl. Ex T, at NOMURA 000219-000224).

**Nomura's Reply:** Nomura disputes that Human resources failed to corroborate Plaintiff's complaint because it did not conduct interviews of witnesses identified by Plaintiff who attended the meeting held on October 18, 2022 as not supported by the record. Plaintiff identified herself, Stanzl, and members of the IT team as present at the meeting when she spoke to Human Resources on October 19, 2022. (Murphy Decl., Ex. T at NOMURA 000220.)  Human Resources ████████

█████████████████████████ (Murphy Decl. Ex T, at NOMURA 000222.)  ██████████

█████████████████████████████ (Murphy Decl., Ex. T at NOMURA 000222 – NOMURA

000223). ████████████████████████████████████ (Pl. Dep. I 175:17-21, 176:2-11.)  Muchnik was not present for the October 18, 2022 meeting but had spoken to Voynova, who ran the meeting, and Voynova did not corroborate Plaintiff's concerns.  (Muchnik Dep. 168:16-169:5, 171:3-19, 195:5-23.)

### C.   *Plaintiff Raises the Same Concerns About Roy in November 2022, Which Are Addressed Again*

141.   Plaintiff sent a calendar invite to Varano, Muchnik, and Anthony to discuss her work environment.  (Pl. Dep. I 186:20-189:11, 190:9-18; Muchnik Dep. 163:7-18; Anthony Dep 144:19-145:4; Murphy Decl. Ex. W, at NOMURA 001416.)

**Response**: Admits.

142.   The meeting was scheduled for November 16, 2022.  (Pl. Dep. I 189:6-15, 190:9-18, 192:13-193:2; Murphy Decl. Ex. W, at NOMURA 001416.)

**Response**: Admits.

143.   When Plaintiff sent the calendar invite to Varano, Muchnik and Anthony, she also attached two ZIP files, titled "refer as HER.zip" and "reply without addressing name."  (Pl. Dep. I 190:9-24.)

**Response**: Admits.

144.   The ZIP files consisted of email correspondences dated January 2022 to March 2022, a number of which were the duplicative emails in continuing chains of emails that contain the same instances of Roy not addressing Plaintiff by name at the beginning of the email.  (Murphy Decl. Ex. X, at NOMURA 001419; Ex. Y, at NOMURA 001448 – NOMURA 001452 Ex. Z, at NOMURA 001440 – NOMURA 001447, Ex. DDD, at NOMURA 001421 – NOMURA 001423, Ex. EEE, at NOMURA 001426 – NOMURA 001430, Ex. FFF, at NOMURA 001434 – NOMURA

001436, Ex. GGG, at NOMURA 001437 – NOMURA 001439; Pl. Dep. I 190:9-191:10, 271:21-22.)

**Response**: Plaintiff refers to the above-cited correspondence for its contents but does not dispute that the document includes the information stated above.

145.   According to Plaintiff, the attached email correspondences showed that Roy did not address her by name.  (Pl. Dep. I 190:9-24, 193:3-207:5.)

**Response**: Admits.

146.   However, Plaintiff acknowledges that Roy referred to her by name in at least one email correspondence included in the ZIP files.  (Pl. Dep. I 193:3-195:15; Murphy Decl. Ex. X, at NOMURA 001420.)

**Response**: Admits.

147.   Plaintiff also acknowledges at least one instance in which Roy emailed Muchnik and did not address Muchnik by name.  (Pl. Dep. I 210:17-212:9; Murphy Decl. Ex. Y, at NOMURA 001448 – NOMURA 001452.)

**Response**: Plaintiff does not dispute that in the document, Roy did not address Muchnik by name, but avers that the email was not addressed to Muchnik personally, but was addressed to a group.

**Nomura's Reply:** Undisputed that the email referenced in Paragraph 147 was addressed to a group.  Plaintiff admits that all of the emails contained in the ZIP files that Plaintiff attached to the email invite for the November 16, 2022 meeting were addressed to a group.  (Murphy Decl. Ex. X, at NOMURA 001419; Ex. Y, at NOMURA 001448 – NOMURA 001452 Ex. Z, at NOMURA 001440 – NOMURA 001447, Ex. DDD, at NOMURA 001421 – NOMURA 001423,

Ex. EEE, at NOMURA 001426 – NOMURA 001430, Ex. FFF, at NOMURA 001434 – NOMURA 001436, Ex. GGG, at NOMURA 001437 – NOMURA 001439; Pl. Dep. I 210:11-15.)

148.    Plaintiff further acknowledges that she did not always address her co-workers by name when sending them emails.  (Pl. Dep. I 207-210:16; Murphy Decl. Ex. Z, at NOMURA 001440 – NOMURA 001447.)

**Response**: Plaintiff does not dispute that in the document, she did not address her co-workers by name, but avers that the email was addressed to a group.

**Nomura's Reply:** Undisputed that the email referenced in Paragraph 148 was addressed to a group.  Plaintiff admits that all of the emails contained in the ZIP files that Plaintiff attached to the email invite for the November 16, 2022 meeting were addressed to a group.  (Murphy Decl. Ex. X, at NOMURA 001419; Ex. Y, at NOMURA 001448 – NOMURA 001452 Ex. Z, at NOMURA 001440 – NOMURA 001447, Ex. DDD, at NOMURA 001421 – NOMURA 001423, Ex. EEE, at NOMURA 001426 – NOMURA 001430, Ex. FFF, at NOMURA 001434 – NOMURA 001436, Ex. GGG, at NOMURA 001437 – NOMURA 001439; Pl. Dep. I 210:11-15.)

149.    In fact, the email correspondence Plaintiff provided for the November 16 meeting reflect that Roy did not consistently fail to address Plaintiff by name in email correspondence and often failed to address other male colleagues by name when corresponding with them.   (Murphy Decl. Ex. X, at NOMURA 001419; Ex. Y, at NOMURA 001448 – NOMURA 001452; Ex. Z, at NOMURA 001440 – NOMURA 001447, Ex. DDD, at NOMURA 001421 – NOMURA 001423, Ex. EEE, at NOMURA 001426 – NOMURA 001430, Ex. FFF, at NOMURA 001434 – NOMURA 001436, Ex. GGG, at NOMURA 001437 – NOMURA 001439; Pl. Dep. I 190:9-191:10, 271:21-22.

**Response**: Plaintiff does not dispute the statement above but avers that the email correspondence shows that Roy failed to address Plaintiff by name in individual emails he sent to her more than he did in individual emails he sent to her male colleagues.

**Nomura's Reply:** Nomura disputes that the email correspondence shows that Roy failed to address Plaintiff by name in individual emails he sent to her than he did in *individual emails* he sent to her male colleagues as not supported by the record (emphasis added).  Plaintiff admits that all of the emails contained in the ZIP files that Plaintiff attached to the email invite for the November 16, 2022 meeting were addressed to a group.  (Murphy Decl. Ex. X, at NOMURA 001419; Ex. Y, at NOMURA 001448 – NOMURA 001452 Ex. Z, at NOMURA 001440 – NOMURA 001447, Ex. DDD, at NOMURA 001421 – NOMURA 001423, Ex. EEE, at NOMURA 001426 – NOMURA 001430, Ex. FFF, at NOMURA 001434 – NOMURA 001436, Ex. GGG, at NOMURA 001437 – NOMURA 001439; Pl. Dep. I 210:11-15.)

150.    Plaintiff admits that the emails from January 2022 through March 2022 were the most recent documents she had at the time of the November 16, 2022 meeting that demonstrated her assertion that Roy referred to Plaintiff as "her" or replied without addressing her by name. (Pl. Dep. 271:21-273:3.)

**Response**: Admits.

151.    Plaintiff further admits that she did not attend any meetings with IT after October 18, 2022.  (Pl. Dep. 274:12-16.)

**Response**: Admits.

152.    Plaintiff reiterated her concerns about Roy during the November 16, 2022 meeting, which she previously addressed with Anthony.  (Anthony Dep. 144:23-145:15.)

**Response**: Admits.

37

153.    During the November 16, 2022 meeting, Varano and Anthony encouraged Plaintiff to address her concerns about Roy with Human Resources.  (Pl. Dep. I 270:2-14.)

**Response**: Plaintiff does not dispute that during the meeting, Varano and Anthony suggested that she speak with Human Resources.

154.    Plaintiff believed that Varano spoke with Roy or Roy's supervisor after the November 16, 2022 meeting.  (Pl. Dep. I 270:18-271:16.)

**Response**: Plaintiff testified that at the time, she believed that Varano spoke with Roy or Roy's supervisor after the November 16, 2022 meeting but that her belief changed (Pl. Dep. I, 271:17-20.

### D.    *Plaintiff Contacts Herzig to* ███████████████████████████

155.    Plaintiff contacted Herzig in or around March 2023 to officially put her complaint against Roy "on record."  (Herzig Dep. 127:3-9.)

**Response**: Plaintiff does not dispute that she contacted Herzig in or around March 2023 but avers that it was not the first time she reached out to Herzig to officially put her complaint against Roy "on record" since she had previously reached out to Herzig in November 2022 to put her complaint "on record" after her meeting with Anthony, Varano and Muchnik on November 16, 2022 (Pl. Dep. I 270:2-14 )(Pl. Dep. I, 176:19-177:7).

156.    Herzig asked Plaintiff whether anything new had occurred with Roy since October 2022.  (Herzig Dep. 127:3-23.)

**Response**: Plaintiff disputes that Herzig asked her whether anything new had occurred with Roy since October 2022 and avers that Herzig asked her whether Roy continued to address Plaintiff as "her" since October 2022.

**Nomura's Reply:** Nomura disputes that Herzig asked Plaintiff "whether Roy continued to address Plaintiff as 'her' since October 2022" as not supported by the record. (Herzig Dep. 127:3-23.)

157.   Plaintiff provided no new information and confirmed that nothing new had happened with Roy since October 2022.  (Herzig Dep. 127:3-23.)

**Response**:  Plaintiff does not dispute that she confirmed with Herzig that there were no new instances of Roy addressing Plaintiff as "her" since October 2022 Roy and that she did not provide Herzig with any new information.

**Nomura's Reply:** Nomura disputes that Plaintiff only "confirmed with Herzig that there were no new instances of Roy addressing Plaintiff as 'her' since October 2022" as not supported by the record. (Herzig Dep. 127:3-23.)

## VII.   PLAINTIFF   IGNORES   NOMURA'S   IN-OFFICE   REQUIREMENT IRRESPECTIVE OF HER MEDICAL APPOINTMENTS

158.   When Plaintiff was hired by Nomura, the Quant Specialist team under Muchnik was remote due to the COVID-19 pandemic.  (Pl. Dep. I 79:16-80:6; 112:24-113:4; Murphy Decl. Ex. L, at NOMURA 006035, Ex. AA, at NOMURA 006049 – NOMURA 006054.)

**Response**: Admits.

159.   However, as of November 1, 2021, all vaccinated employees in Nomura's Global Markets division were required to return to the office four days per week, with the flexibility to work remotely one day per week.  (Murphy Decl. Ex AA, at NOMURA 006053 – NOMURA 006054.)

**Response**: Plaintiff denies knowledge or information regarding this statement and avers that not all vaccinated employees in Nomura's Global Markets division worked in the office four

days a week.   Gerrald Decl. Ex. P at NOMURA 003470 TO NOMURA 003487;   Ex. Q at NOMURA 005930-NOMURA 005931; and Ex. R at NOMURA 004557-004560.

160.   Plaintiff was personally asked to come in to the office three days per week starting in or around August 2022.  (Pl. Dep. II 306:9-12, 307:4-8; Murphy Decl. Ex. BB, at NOMURA 003343.)

**Response**: Plaintiff does not dispute the statement but avers that while Muchnik expressed that, he did not say that it was a requirement and further avers that Muchnik was okay with Plaintiff and Stanzl coming in two days a week and with Polgul working fully remotely.  Pl, Dep. I 218:9-23; Muchnik Dep. 86:9-87:15 Gerrald Decl. Ex. S at NOMURA 004372).

**Nomura's Reply:**  Undisputed that Muchnik testified that he was okay with Plaintiff and Stanzl coming into the office two days a week.  Nomura further states that stated fact is immaterial to this action.  Nomura disputes that there was no in-office requirement in or around August 2022 and that Muchnik "was okay" with "Polgul working fully remotely" as not supported by the record. (Murphy Decl. Ex AA, at NOMURA 006053 – NOMURA 006054; Muchnik Dep. 86:17-25, 93:21-94:4, 99:3-10.)

161.   Plaintiff agreed to come into the office three days per week starting in or around August 2022.  (Pl. Dep. II 306:9-18, 307:4-11; Murphy Decl. Ex. BB, at NOMURA 003343.)

**Response**: Plaintiff does not dispute the statement above and avers that she said that she would try.  Pl. Dep. II 307:4-11.

162.   During a conversation on September 30, 2022, Plaintiff told her co-worker that she "should come in on Monday, Wednesday, and Thursday," but she admitted that she does not "come in very often."  (Pl. Dep. II 308:5-309:18; Murphy Decl. Ex. CC, at NOMURA 005102 – NOMURA 005106.)

**Response**: Plaintiff does not dispute the statement above but avers that she was making the statement in comparison to traders who are in the office five days.   Pl. Dep. II 309:17-22.

163.    Plaintiff admits that she would come in to the office when "there . . . [was] a meeting" or "if someone want[ed] to talk to" her.  (Pl. Dep. II 306:19-307:3.)

**Response**: Plaintiff does not dispute that that came in to the office when "there . . . [was] a meeting" or "if someone want[ed] to talk to" her but avers that she came in to the office on other days as well.  (Gerrald Decl. Ex. S, NOMURA 004513)

**Nomura's Reply:** Nomura disputes that Plaintiff "came into the office on other days as well" as not supported by the record.

### A.    In-Office Requirement for the EDO Team

164.    When the EDO was formed in October 2022, Anthony informed the EDO team that the expectation was that all members of the team would work in the office Tuesday through Thursday; this in office requirement was communicated to Plaintiff again in an email on November 16, 2022, which stated that Plaintiff was expected to be in the office Tuesday, Wednesday, and Thursday from 9:00 AM to 5:00 PM each week along with the rest of the group.  (Pl. Dep. II 309:23-310:8; Anthony Dep. 183:21-23; 192:21-192:2; 204:19-205:17; Murphy Decl. Ex. DD, at NOMURA 005175).

**Response**: Plaintiff does not dispute that there was an expectation that all members of the team would work in the office Tuesday through Thursdays, but disputes that it was communicated to her as a requirement, and avers that there was no disciplinary action associated with anyone who did not comply with the suggestion to work in the office Tuesday through Thursday. Anthony Dep. 205:19-206:5.

**Nomura's Reply:**  Nomura disputes that the expectation that members of the EDO team would work in the office Tuesdays through Thursdays was not communicated as a requirement

41

and that there were no consequences for others who did not comply with the expected in-office work hours as not supported by the record. (Pl. Dep. II 309:23-310:8; Anthony Dep. 183:21-23; 192:21-193:2; 204:19-206:24; Murphy Decl. Ex. DD, at NOMURA 005175.)

165.    Plaintiff understood that the in-office requirement was to facilitate communication among the members of the EDO.  (Pl. Dep. II 350:24-351:13.)

**Response**: Plaintiff does not dispute that Anthony's expectation that the team would work in the office Tuesday through Thursday was to facilitate communication among members of the EDO.

166.    From October 4, 2022 to February 9, 2023, Stanzl was not present in the office on eight of the required in-office days, excluding holidays, vacation and sick time.  (Pl. Dep. II 313:20-315:2; Murphy Decl. Ex. EE, at NOMURA 006067 – NOMURA 006069.)

**Response**: Plaintiff refers to the above-cited exhibit for its contents.

167.    From October 4, 2022 to February 9, 2023, Stanzl typically worked between seven and ten hours a day in the office on required in-office days.  (Pl. Dep. II 315:8-18; Murphy Decl. Ex. EE, at NOMURA 006067 – NOMURA 006069.)

**Response**: Plaintiff refers to the above-cited exhibit for its contents.

168.    At no time between October 4, 2032 and June 29, 2023 did Stanzl arrive to the office after 12:00 PM.  (Pl. Dep. II 315:19-22; Murphy Decl. Ex. EE, at NOMURA 006067 – NOMURA 006069.)

**Response**: Plaintiff refers to the above-cited exhibit for its contents.

169.    From November 1, 2022 to March 30, 2023, Aggarwal was not present in the office on eight of the required in-office days, excluding holidays, vacation and sick time.  (Pl. Dep. II 317:7-15; Murphy Decl. Ex. FF, at NOMURA 006065 – NOMURA 006066.)

**Response**: Plaintiff disputes that Aggarwal was not present in the office on eight of the required in-office days, excluding holidays, vacation and sick time and refers to the above-cited exhibit for its contents which states that Aggarwal was not present in the office on nine of the required in-office days, excluding holidays, vacation and sick time .

**Nomura's Reply:** Undisputed that Aggarwal was not present in the office on nine of the required in office days, excluding holidays, vacation and sick time.  Nomura further states that this fact is immaterial to this matter.

170.    From November 1, 2022 to March 30, 2023, Aggarwal was in the office for approximately eight hours a day or longer on required in-office days.  (Pl. Dep. II 317:16-318:9; Murphy Decl. Ex. FF, at NOMURA 006065 – NOMURA 006066.)

**Response**: Plaintiff refers to the above-cited exhibit for its contents but does not dispute that the document includes the information stated above.

171.    At no time between November 1, 2022 and March 30, 2023 did Aggarwal arrive to the office after 12:00 PM.  (Pl. Dep. II 318:10-12; Murphy Decl. Ex. FF, at NOMURA 006065 – NOMURA 006066.)

**Response**: Plaintiff refers to the above-cited exhibit for its contents but does not dispute that the document includes the information stated above.

172.    From November 1, 2022 through March 30, 2023, Polgul was not present in the office on seven of the required in-office days, excluding holidays, vacation and sick time.  (Pl. Dep. II 318:16-320:15; Murphy Decl. Ex. GG, at NOMURA 000260 – NOMURA 000261.)

**Response**: Plaintiff refers to the above-cited exhibit for its contents but does not dispute that the document includes the information stated above.

173.    From November 1, 2022 through March 30, 2023, Polgul was in the office for approximately eight hours a day on required in-office days.  (Pl. Dep. II 320:16-22; Murphy Decl. Ex. GG, at NOMURA 000260 – NOMURA 000261.)

**Response**: Plaintiff refers to the above-cited exhibit for its contents but does not dispute that the document includes the information stated above.

174.    Between November 1, 2022 and March 30, 2023, Polgul arrived to the office after 12:00 PM on only two required in-office days.  (Pl. Dep. II 320:23-321:10; Murphy Decl. Ex. GG, at NOMURA 000260 – NOMURA 000261.)

**Response**: Plaintiff refers to the above-cited exhibit for its contents but does not dispute that the document includes the information stated above.

175.    Between October 4, 2022 and February 9, 2023, Plaintiff was not present in the office on 17 of the required in-office days, excluding holidays, vacation and sick time.  (Pl. Dep. II 321:20-322:11; Herzig Decl. ¶ 9 , Ex. C at NOMURA 000257 to NOMURA 000258.)

**Response**: Plaintiff refers to the above-cited exhibit for its contents, disputes that she was not present in the office on 17 of the alleged "in-office" days and avers that the 17 days computed by Nomura does not exclude all of her sick time.  Despite not being referenced on Plaintiff's time sheet, Plaintiff requested and was given permission for doctor appointments or days off on the following days: October 18, 2022 for a water leak (NOMURA 003316); October 25, 2022 (NOMURA 004786); November 3, 2022 (FENG 000089); December 14, 2022 (FENG 000042) which she informed Anthony of in person (Feng. Decl. ¶ 65); January 12, 2023 due to a canceled flight (NOMURA 004985, NOMURA 4984; FENG 000047); and February 9, 2023 in which she informed Anthony in person and confirmed his knowledge via chat (NOMURA 005995). (Collectively Gerrald Decl., Ex. U).

**Nomura's Reply:** Nomura admits that Plaintiff informed her supervisors about certain out of office days but denies that she "requested and was given permission" for such days as not supported by the record.

176.    Between October 4, 2022 and February 9, 2023, Plaintiff was in the office a total of 30 days.  (Pl. Dep. II 322:12-323:8; Herzig Decl. ¶ 9 , Ex. C at NOMURA 000257 to NOMURA 000258.)

**Response**: Plaintiff refers to the above-cited exhibit for its contents and does not dispute that she was in the office a total of 30 days.

177.    Plaintiff arrived to the office after 12:00 PM on 10 out of the 30 days that Plaintiff was in the office between October 4, 2022 and February 9, 2023.  (Pl. Dep. II 323:9-19; Herzig Decl. ¶ 9 , Ex. C at NOMURA 000257 to NOMURA 000258.)

**Response**: Plaintiff does not dispute that the above-cited exhibit includes the information stated above but avers that on two of the 10 days she arrived to the office after 12:00 PM, specifically on December 6, 2022 and December 8, 2022, she had been sick in the morning and had notified Nomura of same, and further avers that she worked in excess of 8 hours on both dates. Herzig Decl., Ex. C. & Gerald Decl., Ex. V at NOMURA 004513.

**Nomura's Reply:** Nomura disputes that Plaintiff worked in excess of 8 hours on both December 6, 2022 and December 8, 2022 as unsupported by the record.  The log of remote sessions only provides information about machine activity and not user activity. (Gerald Decl. Ex. V; Murphy Supp. Decl. Ex. G, at NOMURA 005347 – NOMURA 005351.)  Plaintiff acknowledged that she ran her program overnight and she would check it when she woke up.  (Murphy Supp. Decl. Ex. B at Pl. Dep. II 407:6-11.)

178.    Plaintiff left the office after working less than four hours on 10 out of the 30 days that Plaintiff was in the office between October 4, 2022 and February 9, 2023.  (Pl. Dep. II 323:20-25; Herzig Decl. ¶ 9 , Ex. C at NOMURA 000257 to NOMURA 000258.)

**Response**: Plaintiff does not dispute that the above-cited exhibit includes the information stated above but avers it also indicates that she was working in the office in excess of eight hours on multiple days out of the 30 days between October 4, 2022 and February 9, 2023. Herzig Decl., Ex. C at NOMURA 000257 to NOMURA 000258).

**Nomura's Reply:** Nomura admits that Plaintiff worked in the office in excess of eight hours on a total of 6 out of the 30 days between October 4, 2022 and February 9, 2023.  (Herzig Decl. Ex. C., at NOMURA 000257 to NOMURA 000258.)

179.    Plaintiff came in for less than the eight hours expected on 22 out of the 30 days that Plaintiff was in the office between October 4, 2022 and February 9, 2023.  (Pl. Dep. II 324:2-20; Herzig Decl. ¶ 9 , Ex. C at NOMURA 000257 to NOMURA 000258.)

**Response**: Plaintiff does not dispute that the above-cited exhibit includes the information stated above but avers that she was working in excess of eight hours on 29 days out of the 30 days between October 4, 2022 and February 9, 2023, by combining swipes time and remote log in time. (Gerrald Decl. at Ex. V at NOMURA 004513 & Herzig Decl., Ex. C).

**Nomura's Reply:**  Nomura disputes that Plaintiff worked in excess of eight hours on 29 out of 30 days between October 4, 2022 and February 9, 2023 as not supported by the record.  The remote session log only provides information about machine activity and not user activity.  (Gerald Decl. Ex. V; Murphy Supp. Decl. Ex. G, at NOMURA 005347 – NOMURA 005351).  Plaintiff acknowledged that she ran her program overnight and she would check it when she woke up.  (Pl. Dep. II 407:6-11.)

46

180.    Plaintiff acknowledges that she spent substantially less time in the office compared to the other members of the EDO based on the office attendance records. (Pl. Dep. II 388:10-20.)

**Response**: Plaintiff refers to the above-cited attendance records for the information contained therein.

### B.    *Plaintiff's Doctors' Appointments for* ███████████████████████

181.    Plaintiff alleges that Nomura's in-office requirement was problematic for her, because she was ███████████████████████████████████████████ ████████ (Pl. Dep. II 326:18-327:4.)

**Response**:  Plaintiff does not dispute the statement above, but disputes it was the only reason why it was problematic for her.  In addition, it was problematic because she was told that she could only access research data after trading hours, that is after 4:30 or after 5:00 p.m.  It would have been problematic to work 9:00 a.m. to 5:00 p.m. and then until 9:00 p.m., 10:00, or sometimes midnight.  (Pl. Dep. I 235:10-236:15).; Gerrald Decl. Ex. W at NOMURA 005985.

**Nomura's Reply:** Nomura disputes that Plaintiff "could only access research data after trading hours" as not supported by the record.  Plaintiff and other Quants were instructed not to access the *production server* for data during trading hours, but Plaintiff and other Quants could access other data sets in the UAT environment, which is independent of the production server, to work during trading hours.  (Murphy Supp. Decl. Ex. E at Stanzl Dep. 114:21-115:25, 117:7-120:9.)

182.    Plaintiff had four doctors' appointments with ████████████████████████ ████████████████████████████ November 10, 2022, December 14, 2022, January 26, 2023, and February 9, 2023.  (Pl. Dep. II 327:5-23, 329:11-19; Murphy Decl. Ex. HH, at FENG 000137 – FENG 000144.)

**Response**: Admits.

183.    Plaintiff also alleges that she had one ███████ appointment in December 2022 that was not on a required in-office day.  (Pl. Dep. II 327:17-329:10.)

**Response**: Admits.

184.    Plaintiff informed Anthony of her November 10, 2022 doctors' appointment on or about November 9, 2022.  (Pl. Dep. II 331:16-332:16, 343:1-345:14; Murphy Decl. Ex. II at NOMURA 005168 – NOMURA 005172.)

**Response**: Admits.

185.    Plaintiff alleges that she also informed Anthony that she may have follow-up doctors' appointments after her November 10, 2022 visit.  (Pl. Dep. II 332:17-333:11.)

**Response**: Admits.

186.    Anthony told Plaintiff to try to schedule her doctors' appointments on Mondays and Fridays, but if there were appointments on Tuesdays, Wednesday or Thursdays, Plaintiff was to be in the office when she was not in her appointment.  (Anthony Dep. 257:10-19, 258:21-259:7; Herzig Dep. 125:11-24.)

**Response**: Plaintiff admits that Anthony told her that if there were appointments on Tuesdays, Wednesday or Thursdays, Plaintiff was to be in the office when she was not in her appointment and avers that Anthony told her not to schedule her doctors' appointments on Tuesdays, Wednesday or Thursdays.  (Pl. Dep. I, 178:7-13).

187.    Plaintiff claims that Anthony told her to be in the office before her doctors' appointment on February 9, 2023, which was scheduled for the afternoon.  (Pl. Dep. II 327:5-23, 329:11-19, 339:2-23; Murphy Decl. Ex. HH, at FENG 000137 – FENG 000144.)

**Response**: Admits.

188.    Plaintiff did not come into the office on February 9, 2023.  (Pl. Dep. II 341:4-23.)

**Response**: Admits.

189.    Nor did Plaintiff come into the office before or after her doctors' appointments on December 14, 2022 or January 26, 2023.  (Pl. Dep. II 341:4-23.)

**Response**: Admits.

190.    Plaintiff knew how to request sick time at Nomura.  (Pl. Dep. II 357:13-18; Murphy Decl. Ex JJ, at NOMURA 006048.)

**Response**: Admits

191.    Plaintiff acknowledges that she could have used sick days for her medical appointments pursuant to Nomura's Employee Handbook, dated August 2022.  (Pl. Dep. II 358:17-360:23.)

**Response**: Admits.

192.    However, Plaintiff did not use sick time for her doctors' appointments on November 10, 2022, December 14, 2022, January 26, 2023 or February 9, 2023.  (Pl. Dep. II 355:22-356:4, 361:4-10; Murphy Decl. Ex JJ, at NOMURA 006048.)

**Response**: Admits

193.    Plaintiff knew how to contact Nomura's Human Resources department.  (Pl. Dep. II 357:6-8.)

**Response**: Admits.

194.    However, Plaintiff did not seek a leave of absence in connection with her doctors' appointments.  (Pl. Dep. II 355:22-356:25.)

**Response**: Plaintiff does not dispute that she did not seek a leave of absence from HR but disputes that she did not seek a leave of absence in connection with her doctor's appointments and avers that she tried to discuss with Anthony leave in connection with her doctor's appointments

and notified him of her appointments, but she was discouraged because Anthony told her not to schedule her medical appointments on Tuesdays, Wednesdays and Thursdays.  (Pl. Dep. I, 178:7-13); Feng Decl. at ¶ 67.

**Nomura's Reply:** Nomura disputes that Plaintiff tried to discuss taking a medical leave with Anthony as not supported by the record.  Plaintiff admits that she never sought a medical leave of absence while she was employed with Nomura and that she did not speak to anyone other than her mentor in June or July of 2023 about wanting to seek a medical leave.  (Murphy Supp. Decl. Ex. A at Pl. Dep. I 106:8-21; 108:9-16.)

195.    Nor did Plaintiff request an accommodation to be excused from Nomura's in-office requirement.  (Pl. Dep. II 355:22-356:25, 357:6-12.)

**Response**: Plaintiff does not dispute that she did not request an accommodation to be excused from Nomura's "in-office requirement" but avers that she went to Human Resources after Michael Anthony told her not to schedule her medical appointments on Tuesdays, Wednesdays and Thursdays, and Human Resources, and Plaintiff was told that the "in-person requirement" was to improve communication with the team.  (Pl. Dep. I, 179:2-17)

196.    Plaintiff acknowledges that no one at Nomura told her that she could not attend her doctors' appointments.  (Pl. Dep. II 341:24-342:7.)

**Response**: Plaintiff does not dispute that after her doctor's appointment, no one told her that she could not take her medical appointments but avers that Anthony told her not to schedule her medical appointments on Tuesdays, Wednesdays and Thursdays.  (Pl. Dep. I, 178:7-13).

197.    Plaintiff further acknowledges that she was never prevented from taking sick days to attend doctors' appointments.  (Pl. Dep. 393:22-394:3.)

**Response**: Plaintiff does not dispute that she was never prevented from taking sick days to attend doctors' appointments but avers that Anthony told her not to schedule her medical appointments on Tuesdays, Wednesdays and Thursdays . (Pl. Dep. I, 178:7-13).

198.    Plaintiff was not ███████████████████████████ (Pl. Dep. II 331:9-14.)

**Response**: Admits.

### C.    *Plaintiff Misunderstands Anthony's Email Correspondence About Her "Short Notice"*

199.    On February 23, 2023, Plaintiff emailed Anthony and Stanzl, stating, in pertinent part, "I will need to work from home today for a doctor's appointment.  Thanks!" (Pl. Dep. II 372:16-373:7; Anthony Dep: 187:10-17; Murphy Decl. Ex. KK, at NOMURA 005267.)

**Response**: Plaintiff refers to the above-cited email for its contents but does not dispute that the document includes the information stated above.

200.    Plaintiff admits that at the time that she sent that email that she did not have a doctors' appointment scheduled for February 23, 2023; rather, she took "a mental health day."  (Pl. Dep. II 375:11-376:10, 387:24-388:7.)

**Response**: Plaintiff does not dispute that at the time that she sent the email that she did not have a doctor's appointment scheduled for February 23, 2023, but avers that she anticipated seeing Dr. Malaspina that day because Dr. Malaspina told if she wanted to see her urgently, she could see her that day.  (Pl. Dep. II 378:25-379:5).

201.    Plaintiff did not use sick time for her absence on February 23, 2023.   (Pl. Dep. II 376:11-20; Murphy Decl. Ex JJ, at NOMURA 006048.)

**Response**: Plaintiff does not dispute that she did not use sick time for her absence on February 23, 2023, but avers that she used the day as a mental health day as is permitted pursuant

to Section 5.6.2 on pages 38-39 of Nomura's Employee Handbook. (Murphy Decl. 1 Ex. 95/NOMURA 006109-NOMURA 006110) (Pl. Dep. II 375:17-21)

**Nomura's Reply:** Nomura disputes that Plaintiff's absence on February 23, 2023 was a "mental health day" "permitted pursuant to Section 5.6.2 of Nomura's Employee Handbook" (the "Handbook") as not supported by the record. Nomura's Employee Handbook Section 5.6.2 permits employees to use sick time for mental health reasons, but as Plaintiff admits, she did not use sick time for her absence on February 23, 2023, as contemplated by the Handbook. (Pl. Dep. II 376:11-20; Murphy Decl. Ex JJ, at NOMURA 006048.)

202.    Anthony responded to Plaintiff's email correspondence on February 24, 2023 and said, in pertinent part:

> "As already discussed our days in the office are designed to improve overall team coordination & communication. Accordingly going forward, when not in an appointment, please ensure you are present in the building on the schedule of the rest of the team. Additionally with regard to the upcoming time off, I can approve this but understand we are disappointed with such short notice for a long break during a critical time of development. In the future please ensure we have as much notice as possible to account for this in our planning."

(Pl. Dep. II 376:21-378:7; Anthony Dep. 187:18-188:2; Murphy Decl. KK, at NOMURA 005267.)

**Response**: Plaintiff refers to the above-cited email for its contents but does not dispute that the document includes the information stated above but avers that Anthony did not indicate non-compliance would adversely impact her review or employment status. Anthony Dep. 205:19-206:5.205

**Nomura's Reply:** Nomura disputes that Anthony did not indicate that non-compliance with the in-office requirement would adversely impact Plaintiff's review or employment status as not supported by the record.

203.    Plaintiff responded to Anthony's email corresponded on February 24 and said, in pertinent part:

"I totally support and will comply with what you said about the discussed days in the office, that are designed to improve overall team coordination.

The reason it was short notice is that I was not feeling well and the doctor agreed to see me that day. And I did not want to take a sick day off as I know we are in the critical development stage and there is a lot of work for me to complete."

(Pl. Dep. II 376:21-378:7; Murphy Decl. KK, at NOMURA 005267.)

**Response**: Plaintiff refers to the above-cited email for its contents but does not dispute that the document includes the information stated above.

204.   Plaintiff admits that her statement about the doctor agreeing to see her that day was not true.  (Pl. Dep. II 378:14-379:7).

**Response**: Plaintiff does not dispute that Dr. Malaspina did not see her that day but avers that Dr. Malaspina told if she wanted to see her urgently, she could see her that day.  (Pl. Dep. II 378:25-379:5):

205.   Plaintiff also admits that Anthony's comment about her "short notice" was in reference to her vacation time, not her work from home request on February 23, 2023.  (Pl. Dep. II 378:4-10; Murphy Decl. KK, at NOMURA 005267.)

**Response**: Admits.

206.   Plaintiff further admits that she misunderstood what Anthony was referring to by "short notice," and that is why she responded to his email correspondence in the way that she did. (Pl. Dep. II 379:8-19; Murphy Decl. KK, at NOMURA 005267.)

**Response**:  Admits.

### D.      *Plaintiff Works from Home for Reasons Unrelated to Medical Appointments*

207.   Including her medical appointments, Plaintiff worked from home on required in-office days on at least 17 occasions between October 4, 2022 and February 9, 2023.  (Herzig Decl. ¶ 9 , Ex. C at NOMURA 000257 to NOMURA 000258.)  For example, on October 18, 2022,

Plaintiff told Anthony and Stanzl that she was working from home, because there was a water leak in her apartment.  (Pl. Dep. 395:7-24; Murphy Decl. Ex. LL, at NOMURA 003316.)

**Response**: Plaintiff refers to the above-cited exhibit for its contents but does not dispute that the document includes the information stated above.

208.    On January 11, 2023, Plaintiff told Anthony and Stanzl that she would need to work from home the following day, as her flight back to New York was canceled.  (Pl. Dep. II 396:11-397:25; Murphy Decl. Ex. MM, at NOMURA 004985.)

**Response**: Admits.

209.    On February 8, 2023, Plaintiff told Anthony and Stanzl that she was working from home in the morning due to electrical work at her home.  (Pl. Dep. II 399:4-400:2; Murphy Decl. Ex. NN, at NOMURA 004991.)

**Response**: Admits.

## VIII.    PLAINTIFF'S OTHER ONGOING PERFORMANCE CONCERNS

210.    Plaintiff admits that she had conversations about her performance with Matthew Ferreira, Plaintiff's mentor; Varano; Muchnik; Stanzl; and Anthony during her tenure with Nomura.  (Pl. Dep. II 441:15-442:15.)

**Response**: Admits.

211.    Plaintiff also admits that the conversations about her performance were not always positive.  (Pl. Dep. II 443:23-444:12.)

**Response**: Plaintiff does not dispute that not all the conversations about her performance were positive.

### A.    *Examples of Plaintiff's Poor Performance*

212.    Stanzl testified that it was "difficult" to get Plaintiff "up to speed" while working together on the Delta Impact Model project.  (Stanzl Dep. 21:9-25.)

**Response**: Plaintiff does not dispute that Stanzl testified as such and refers to the deposition transcript of Anthony for the contents of his testimony but avers that Stanzl's testimony is contradicted by statements he made Plaintiff's about her work on the Delta Impact Model project which he said was a major project and key accomplishment.  (Gerrald Decl. Ex. H at NOMURA 001644- NOMURA 001645.

**Nomura's Reply:** Nomura disputes that Stanzl's testimony that it was "difficult" to get Plaintiff "up to speed" while working on the Delta Impact Model is contradicted by statements he made about her work on the Delta Impact Model project as not supported by the record.

213.    On April 16, 2021, Plaintiff sent Varano a presentation with a mistake in it.  (Pl. Dep. II 444:25-445:8, 448:3-20; Murphy Decl. Ex. OO, at NOMURA 001620 – NOMURA 001621.)

**Response**: Plaintiff does not dispute that the presentation had a mistake and avers that she found the mistake herself and corrected it.  (Pl. Dep. II 448:3-449:2) .

214.    Plaintiff admits that she "should have double-checked" the presentation before sending it to Varano.  (Pl. Dep. II 448:3-24; Murphy Decl. Ex. OO, at NOMURA 001620 – NOMURA 001621.)

**Response**: Admits.

215.    On June 17, 2022, Plaintiff again sent incorrect work product to Varano.  (Pl. Dep. II 459:11-460:25; Murphy Decl. Ex. PP, at NOMURA 002648.)

**Response**: Plaintiff does not dispute that the work produce was incorrect and avers that she found the mistake herself and corrected it.  (Pl. Dep. II 460:17-461:4).

216.    Plaintiff admits that she had to correct her code and re-send Varano an updated version.  (Pl. Dep. II 459:11-460:25; Murphy Decl. Ex. PP, at NOMURA 002648.)

**Response**: Admits.

217.    On July 5, 2022, Plaintiff told Muchnik, in relevant part, Varano "was not happy I was not leveraging data lake while developing the earnings volatility model." (Pl. Dep. II 462:8-463:5; Murphy Decl. Ex. QQ, at NOMURA 004322.)

**Response**: Admits.

218.    Stanzl testified that toward the end of 2022, it took Plaintiff approximately four days to complete a task related to the re-estimation of the Delta Impact Model project, which should have taken one hour to complete. (Stanzl Dep. 47:24-49:15.)

**Response**: Plaintiff does not dispute that Stanzl testified as such and refers to the deposition transcript of Stanzl for the contents of his testimony but avers that the reason for the delay included, among other things, the fact that Plaintiff was not allowed to run her code during trading hours and it required recalibration of the model using longer historical data (Pl. Dep. II 418:2-5 and 529:10-530:3).

219.    Stanzl recalled asking Plaintiff to have one of Nomura's Software Developers assist her, but Plaintiff failed to do so. (Stanzl Dep. 48:20-49:20.)

**Response**: Plaintiff disputes the statement and avers that Plaintiff did not have any software developers to assist her.

**Nomura's Reply:** Nomura disputes that Plaintiff did not have any software developers to assist her as not supported by the record.

220.    Stanzl testified that Plaintiff also did not work with her colleagues on the software development of a particular model in the beginning of 2023, which resulted in the model being published to Nomura's Trading Desk with missing or outlier data. (Stanzl Dep. 50:11-51:21.)

**Response**: Plaintiff refers to the deposition transcript of Stanzl for the contents of his testimony.

### B.    Anthony Attempts to Coach Plaintiff on Her Performance

221.    Plaintiff had a one-on-one meeting with Anthony on March 15, 2023.  (Pl. Dep. II 478:11-20, 487:3-13.)

**Response**: Admits.

222.    Anthony provided Plaintiff with performance feedback during the March 15, 2023 one-on-one meeting.  (Pl. Dep. II 479:18-25.)

**Response**: Admits.

223.    Anthony sent Plaintiff an email on March 22, 2023 to recap the content of the one-on-one meeting from his perspective.  (Pl. Dep. II 487:14-19; Murphy Decl. Ex. RR, at NOMURA 005264.)

**Response**: Plaintiff refers to the above-cited email for its contents.

224.    Anthony's March 22, 2023 email correspondence reads, in pertinent part:

"Hopefully our session last week was useful for you.  In order to ensure we're on the same page going forward, I wanted to quickly send a follow up note summarizing some of our discussion, specifically highlighting the areas we discussed for growth.  Ultimately to ensure success in our new group structure, and to meet the expectations of a VP, please keep the below in mind as we move forward.  Also as discussed, I'm happy to have periodic status updates to ensure all of these are progressing as expected."

(Pl. Dep. II 488:2-17; Murphy Decl. Ex. RR, at NOMURA 005264.)

**Response**: Plaintiff refers to the above-cited email for its contents but does not dispute that the document includes the information stated above.

225.    Anthony's March 22, 2023 email correspondence also outlined seven areas for improvement, including: (1) providing specific context during communications with others; (2) increased collaboration with co-workers; (3) proactively seeking feedback and staying in front of

any potential problems; (4) improved consistency of engagement, particularly in team discussions; (5) increased independence in seeking feedback and dialogue; (6) planning of project roadmaps and timelines; and (7) managing required tasks and following through on issues raised.   (Pl. Dep. II 492:4-493:20, 496:4-497:21; Murphy Decl. Ex. RR, at NOMURA 005264.)

**Response**: Plaintiff refers to the above-cited exhibit for its contents but disputes the truth of the statements contained therein and avers that she responded to Anthony's email objecting to same.  Gerrald Dec. Ex. X, NOMURA 005265-NOMURA 005267 .  Plaintiff further avers that a prior draft of the email from Anthony included a sentence stating "I firmly believe your contribution to the team will meet our expectations and ultimately exceed them in time."  However, after review by Herzig in Human Resources, that language was modified as it was "too positive/affirmative in her success."  Gerrald Dec. Ex. VV NOMURA 004850 (Dep. Ex. 114); NOMURA 004419 - NOMURA 004420.

**Nomura's Reply:** Nomura disputes that Plaintiff responded to Anthony's email objecting to the areas for improvement Anthony outlined in his March 22, 2022 email as not supported by the record.  Nomura admits that a previous draft version of the email Anthony sent to Plaintiff contained the language referenced in Plaintiff's response to Paragraph 225 and that the language was changed after Herzig reviewed and commented on the draft email.  Nomura further states, however, that those facts are immaterial to this action.

226.    Plaintiff admits that her husband also mentioned that she needs to provide specific context when communicating with others.  (Pl. Dep. II 490:21-489:12, 493:21-494:7.)

**Response**: Plaintiff does not dispute the statement and avers that she stated that this happens to anyone and in everyone's life.  (Pl. Dep. II 493:16-494:23).

227. After Plaintiff received Anthony's March 22, 2023 email correspondence, she asked Anthony whether his feedback would impact her year-end review. (Pl. Dep. II 498:7-14.)

**Response**: Admits.

228. Plaintiff was told that her year-end review would likely be impacted. (Pl. Dep. II 498:7-18.)

**Response**: Admits.

### C. *Plaintiff's Partially Meets Expectations Performance Rating for Fiscal Year 2023*

229. Plaintiff received a Partially Meets Expectations performance rating for fiscal year 2023. (Pl Dep. II 518:4-12; Stanzl Dep. 122:3-9; Murphy Decl. Ex. SS, at NOMURA 000075 – NOMURA 000083.)

**Response**: Admits.

230. Stanzl made the decision to rank Plaintiff as Partially Meets Expectations. (Stanzl Dep. 80:12-15.

**Response**: Plaintiff denies knowledge or information regarding this statement but avers upon information and belief that Stanzl received input from Anthony

231. Stanzl drafted Plaintiff's year-end performance review for fiscal year 2023 with input from Anthony and Herzig. (Stanzl Dep. 81:5-9; Herzig Dep. 165:6-17.)

**Response**: Admits.

232. With respect to the Delta Impact Model, Stanzl commented the following: ███

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

(Pl Dep. II 527:7-20; Murphy Decl. Ex. SS, at NOMURA 000079.)

**Response**: Plaintiff refers to the above-cited exhibit for its contents but does not dispute that the document includes the information stated above.

233.    With respect to the Earnings Volatility Prediction Model, Stanzl commented the following: ███████████████████████████████████████ ███████████████████████████████████████████ (Pl Dep. II 530:4-531:4; Murphy Decl. Ex. SS, at NOMURA 000080.)

**Response**: Plaintiff refers to the above-cited exhibit for its contents, does not dispute that the document includes the information stated above, but avers that the comments contained therein differ from those contained in a prior draft.  (Gerrald Decl. Ex. Y, NOMURA 004081-004082).

**Nomura's Reply:** Nomura admits that prior draft versions of Plaintiff's year-end performance review exist and that the final version varies from previous drafts.  Plaintiff's year-end performance review was based on feedback from Plaintiff's stakeholders, including Stanzl, Anthony and Varano.  (Herzig Dep. 166:22-167:6.)  Nomura further states that the fact that there are prior drafts that contain different language is immaterial to this action.

234.    Plaintiff admits that the Earnings Volatility Prediction Model's release was postponed and was not being used by Nomura's Traders as of March 2023.  (Pl. Dep. II 531:5-20.)

**Response**: Plaintiff admits that the model was not being used by Nomura's Traders as of March 2023, but avers that the model was released in January 2023 (Pl. Dep. II 531:5-20).

235.    Stanzl also commented that Plaintiff ███████████████████████ ███████████████████████████ in her fiscal year 2023 year-end review.  (Pl Dep. II 532:2-21; Murphy Decl. Ex. SS, at NOMURA 000081.)

**Response**: Plaintiff refers to the above-cited exhibit for its contents but does not dispute that the document includes the information stated above.

236.    Stanzl also included areas for development in Plaintiff's year-end review for fiscal year 2023, including: ███████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████    (Pl Dep. II 533:19-535:15; Stanzl Dep. 122:14-124:14; Murphy Decl. Ex. SS, at NOMURA 000083.)

**Response**: Plaintiff refers to the above-cited exhibit for its contents but does not dispute that the document includes the information stated above.

237.    Stanzl testified that he received negative feedback from Varano; Alex Witten ("Witten"), Co-Head of Equity Trading and Head of Equity Derivatives Training; and Anthony regarding Plaintiff's communication.  (Stanzl Dep. 122:22-124:23; Anthony Dep. 89:11-16.)

**Response**:  Plaintiff denies knowledge or information regarding this statement and refers to the deposition transcript of Stanzl for the contents of his testimony.

238.

(Pl Dep. II 535:12-536:11; Stanzl Dep. 124:24-126:17; Murphy Decl. Ex. SS, at NOMURA 000083.)

**Response**: Plaintiff refers to the above-cited exhibit for its contents but does not dispute that the document includes the information stated above.

239.    Stanzl testified that Plaintiff refused to work with Aggarwal because, in Plaintiff's view, Aggarwal was "not qualified enough."  (Stanzl Dep. 126:15-25.)

**Response**: Plaintiff refers to the deposition transcript of Stanzl for the contents of his testimony.

240.   Plaintiff discussed her year-end performance review for fiscal year 2023 with Stanzl for more than one hour.  (Pl. Dep. II 536:12-16, 537:7-17.)

**Response**: Admits.

241.   Plaintiff received a $████████ bonus for fiscal year 2023.  (Murphy Decl. Ex. M.)

**Response**: Admits.

### D.   *Polgul's Performance Rating and Compensation for Fiscal Year 2023*

242.   Polgul received a base salary of $████████ for fiscal year 2023.  (Murphy Decl. Ex. M.)

**Response**: Plaintiff denies knowledge or information regarding this statement.

243.   Polgul received a Meets Expectations performance rating for fiscal year 2023. (Murphy Decl. Ex. M.)

**Response**: Plaintiff denies knowledge or information regarding this statement.

244.   Polgul received a discretionary bonus of $████████ for fiscal year 2023.  (Murphy Decl. Ex. M.)

**Response**: Plaintiff denies knowledge or information regarding this statement.

## IX.   PLAINTIFF'S RETALIATION COMPLAINT AGAINST ANTHONY, AND HER QUICK WITHDRAWAL OF THE SAME

245.   On April 3, 2023, Plaintiff made a retaliation complaint to Herzig via email.  (Pl. Dep. II 544:21-545:13.)

**Response**: Admits.

246.   Plaintiff's email to Herzig read, in pertinent part:

"I am writing to report a case of retaliation.

I had medical issues and needed to visit my doctors. My manager Michael Anthony told me to move my doctor's appointments out of Tuesday, Wednesday, and Thursday, I did not do that, as it is not possible due to the doctor's schedule. He also told to come to the office before and after the appointment, but, I did not do that as it is was not possible due to the nature of the medical procedure.

I believe that Michael Anthony is retaliating on me for not doing what he told me to do. He has given me a negative yearend performance review and his performance feedback has been unreasonable. For your information, my doctor's visits are 2022/11/10, 2022/12/14, 2023/1/26 and 2023/2/9."

(Pl. Dep. II 544:25-546:18; Murphy Decl. Ex. UU, at NOMURA 004901.)

**Response**: Plaintiff refers to the above-cited exhibit for its contents but does not dispute that the document includes the information stated above.

247.    Plaintiff admits that Stanzl was her direct supervisor. (Pl. Dep. II 546:19-21.)

**Response**: Plaintiff admits that Stanzl was her direct supervisor but avers that she also reported to Anthony.  (Pl. Dep. I, 115:6-25).

248.    Plaintiff also admits that Stanzl gave Plaintiff her year-end review for fiscal year 2023.  (Pl. Dep. II 546:19-25.)

**Response**: Admits but avers that Anthony was also involved in the drafting of the review. (Gerrald Dec. Ex. Z at NOMURA 004419 - NOMURA 04420; NOMURA 005309 -

- NOMURA 005311;  NOMURA 004077- NOMURA 004082; NOMURA 004061- NOMURA

004063; NOMURA 004836; NOMURA 001371; NOMURA 001373; NOMURA 001365- NOM

URA 001370; NOMURA 004413- NOMURA 004414; NOMURA 001484

- NOMURA 001485).

249.    Plaintiff further admits that her year-end review took into account feedback from multiple individuals.  (Pl. Dep. II 547:15-20.)

**Response**: Admits.

63

250.    Herzig acknowledged receipt of Plaintiff's retaliation complaint on April 4, 2023. (Pl. Dep. II 547:24-548:3; Murphy Decl. Ex. UU, at NOMURA 004901.)

**Response**: Admits.

251.    Herzig scheduled a meeting with Plaintiff on April 13, 2023 at 10:00 AM to discuss Plaintiff's retaliation complaint.  (Pl. Dep. 548:21-549:12; Herzig Dep. 165:18-166:3; Murphy Decl. Ex. VV, at NOMURA 000229.)

**Response**: Admits.

252.    Plaintiff proposed rescheduling the meeting for one week later on April 20, 2023. (Pl. Dep. 548:21-549:16; Herzig Dep. 166:8-16; Murphy Decl. Ex. VV, at NOMURA 000229.)

**Response**: Plaintiff does not dispute that she proposed rescheduling the meeting for one week later and avers that she had to reschedule the meeting because Anthony scheduled a group meeting with her at the same time. (Pl. Dep. II, 550:12-25)  .

253.    Herzig asked Plaintiff whether she had any other time on April 13, 2023 to speak about her retaliation complaint.  (Pl. Dep. 550:16-551:21; Herzig Dep. 166:8-16; Murphy Decl. Ex WW, at NOMURA 005224 – NOMURA 005225.)

**Response**: Plaintiff does not dispute that Herzig asked Plaintiff whether she had any other time on April 13, 2023 to speak about her retaliation complaint but avers that Herzig and Lindsay Thorvaldsen in Human Resources ridiculed Plaintiff's need to reschedule and made comments such as "haha so weird," "I'm dumbfounded," and "As long as I am engaging with her and making myself available, she can't say that we are ignoring her complaint." (Gerrald Decl. Ex. AA at NOMURA 005868-NOMURA 005869).

254.    Plaintiff did not respond to Herzig.  (Herzig Dep. 166:8-16; Murphy Decl. Ex XX, at NOMURA 005224 – NOMURA 005225.)

**Response**: Plaintiff does not dispute that she did not respond to Herzig.

255.    Thereafter, Plaintiff proposed moving the meeting with Herzig from April 20, 2023 to April 27, 2023.  (Pl. Dep. II 552:12-24; Herzig Dep. 166:8-16; Murphy Decl. Ex. XX at NOMURA 000230.)

**Response**: Plaintiff does not dispute that she proposed moving the meeting with Herzig from April 20, 2023 to April 27,

256.    On April 14, 2023, Herzig emailed Plaintiff, stating, in pertinent part:

"I want to loop back with you regarding the issue you raised in retaliation to your Year End performance rating and feedback. I have reviewed the information and found no evidence of any retaliation that impacted your rating or the supporting details of the yearend review. The review contained a holistic summary of feedback provided by all of your stakeholders, based on legitimate facts. Whether you agree or not, it was determined that the rating given was in line and supported the overall feedback. From this point forward I consider this matter closed and your rating stands. . . .

Unless you have something new to discuss, I will be cancelling the April 27th meeting we have scheduled."

(Pl. Dep. II 554:5-55:13; Herzig Dep. 169:2-19; Murphy Decl. Ex. YY, at NOMURA 005299.)

**Response**: Plaintiff refers to the above-cited exhibit for its contents but does not dispute that the document includes the information stated above, but avers that Herzig did not complete a full investigation as required under Section 2.6 of Nomura's Handbook.  Murphy Decl., Ex. I at NOMURA 006083-NOMURA 006084.

**Nomura's Reply:** Nomura disputes that Herzig did not complete a full investigation as required under Section 2.6 of Nomura's Handbook as not supported by the record.  (Murphy Supp. Decl. Ex. F at Herzig Dep. 165:18-168:14.)

257.    Herzig was involved in drafting of Plaintiff's year-end performance review for fiscal year 2023, and she already spoke with Anthony, Varano, and Stanzl regarding their feedback on Plaintiff's performance.  (Herzig Dep. 166:21-167:16.)

**Response**: Plaintiff admits that Herzig testified that she was involved in the drafting of Plaintiff's year-end performance review for fiscal year 2023, and denies knowledge or information regarding the remainder of the statement.

258.   Plaintiff did not raise any new issues with Herzig.  (Pl. Dep. II 555:14-16.)

**Response**: Admits.

259.   On June 8, 2023, Plaintiff retracted her retaliation complaint against Anthony.  (Pl Dep. I 555:21-556:3; Murphy Decl. Ex. ZZ, at NOMURA 004466.)

**Response**: Admits and avers that Plaintiff retracted her retaliation complaint against Anthony because she had passed her FINRA exam and wanted to work as a quantitative trader on the Central Risk Book group for which Anthony was seeking a quant, and also because Herzig told her to move on.  (Pl. Dep. II 556:4-16).

260.   Anthony first learned of Plaintiff's April 2023 retaliation complaint in connection with this lawsuit.  (Anthony Dep. 256:14-22; Herzig Dep. 166:21-167:16, 168:10-14.)

**Response**: Plaintiff denies knowledge or information regarding this statement.

## X.   NOMURA'S BASE SALARY REVIEW FOR FISCAL YEAR 2024

261.   Nomura's Human Resources department reviews employees' salaries once a year to identify any individuals who are similar, but have different pay.  (Prahofer Dep. 39:17-40:19.)

**Response**: Plaintiff denies knowledge or information regarding this statement.

262.   If the Human Resources department flags a particular individual, they will discuss the individual with management and ascertain whether there are factors that explain the difference in pay.  (Prahofer Dep. 41:2-8, 43:2-7.)

**Response**: Plaintiff denies knowledge or information regarding this statement.

263.    Nomura considers the following factors when analyzing employees' pay: experience relevant to the position, tenure at Nomura, and performance rating.  (Prahofer Dep. 41:2-25.)

**Response**: Plaintiff denies knowledge or information regarding this statement.

264.    In or around March 2023, Nomura commenced a base salary review to assess, among other things, whether any Associates or Vice Presidents should receive a base salary increase at the start of the new fiscal year.  (Herzig Dep. 153:6-154:22, 184:22-2; Murphy Decl. Ex. AAA, at NOMURA 006018.)

**Response**: Plaintiff denies knowledge or information regarding this statement.

265.    Nomura had increased the salary bands associated with the Associate and Vice President positions for fiscal year 2024.  (Herzig Dep. 154:16-22; Prahofer Dep. 43:14-45:4; Murphy Decl. Ex. AAA, at NOMURA 006018.)

**Response**: Plaintiff denies knowledge or information regarding this statement.

266.    The base salary review was being conducted at this time, because it was toward the end of the fiscal year.  (Prahofer Dep. 85:21-86:11.)

**Response**: Plaintiff denies knowledge or information regarding this statement.

267.    On March 20, 2023, Human Resources circulated an email to the Global Head of Equity Trading—Anthony's direct supervisor—that included a spreadsheet with the following comment next to Plaintiff's name,: "Bring up to minimum/gender pay equity."  (Herzig Dep. 154:2-156:21; Murphy Decl. Ex. L, at NOMURA 006035 – NOMURA 006039, Ex. AAA, at NOMURA 006018.)

**Response**: Admits.

268.    Nomura was not conducting an equal pay analysis in or around March 2023. (Herzig Dep. 153:23-154:22, 155:15-20, 157:10-17, 184:22-2; Murphy Decl. Ex. AAA, at NOMURA 006018.)

**Response**: Plaintiff denies knowledge or information regarding this statement.

269.    The "gender pay equity" comment next to Plaintiff's name was added by Herzig and was "just a flag, a potential discussion point."  (Herzig Dep. 155:6-8; 155:15-156:3; Prahofer Dep. 86:16-87:7; Murphy Decl. Ex. AAA, at NOMURA 006018.)

**Response**: Plaintiff does not dispute that Herzig testified as such, but avers that Anthony stated that the "gender pay equity" comment indicated that gender equity was a factor in the different compensation paid to people in his group and that the recommendation was to increase Plaintiff's compensation to "bring up the minimum/gender pay equity." (Anthony Tr. 97:11-99:03; 273:4-274:21).

**Nomura's Reply:** Nomura disputes that Anthony indicated in his testimony that "gender equity was a factor in the different compensation paid to people in his group" as not supported by the record. (Murphy Supp. Decl. Ex. D at Anthony Dep. 274:9-276:4.)

270.    Plaintiff's was paid within the Vice President salary band for fiscal year 2023. (Murphy Decl. Ex. AAA, at NOMURA 006018, Ex. P, at NOMURA 000008.)

**Response**: Plaintiff refers to the above-cited exhibit for its contents and while she does not dispute that the document includes the information stated above, she avers that she was paid a salary lower than her male counterpart, Polgul. (Gerrald Decl. Ex. L, at NOMURA 6018-6019).

271.    Plaintiff was one of several employees who were identified as being below the new Vice President salary band for fiscal year 2024.  (Herzig Dep. 184:22-185:5; Murphy Decl. Ex. AAA, at NOMURA 006018.)

**Response**: Plaintiff refers to the above-cited exhibit for its contents and does not dispute that the document includes the information stated above, but avers she was the only employee designated on a spreadsheet with the following comment next to her name: "Bring up to minimum/gender pay equity." (Gerrald Decl. Ex. L, at NOMURA 6018-6019).

272.    After discussion, Nomura decided not to increase Plaintiff's base salary, because she received a Partially Meets Expectations performance rating for fiscal year 2023, and she was set to receive a bonus. (Herzig Dep. 185:10-21.)

**Response**: Plaintiff denies knowledge or information regarding this statement.

273.    Nomura decided not to raise any employees' salaries in the Global Markets Division who received a Partially Meets expectation rating for fiscal year 2023. (Prahofer Dep. 87:8-20.)

**Response**: Plaintiff denies knowledge or information regarding this statement.

274.    Plaintiff was part of the broader Global Markets Division at Nomura. (Pl. Dep. II 296:10-15.)

**Response**: Admits.

275.    Other employees who were identified as being below the new salary bands for fiscal year 2024 similarly did not receive a base salary increase. (Herzig Dep. 186:7-11.)

**Response**: Plaintiff denies knowledge or information regarding this statement.

## XI. PLAINTIFF ANONYMOUSLY RESPONDS TO A FIRM SURVEY IN JULY 2023

276.    Plaintiff alleges that she completed an employee survey in July 2023. (Pl. Dep. II 586:3-5.)

**Response**: Admits.

277.    Plaintiff alleges that she responded to the Firm survey by stating, "Global Markets should stop discriminating against women." (Pl. Dep. II 585:23-586:16, 587:21-588:6.)

**Response**: Admits.

278.    Nomura's employee surveys are administered on an anonymous and confidential basis.  (Prahofer Dep. 79:3-10.)

**Response**: Plaintiff denies knowledge or information regarding this statement.

279.    No one at Nomura would know the identity of who submitted a specific survey response.  (Prahofer Dep. 79:11-15.)

**Response**: Plaintiff denies knowledge or information regarding this statement.

280.     The survey results are submitted directly to a third party who then compiles a general report for Nomura's review.  (Prahofer Dep. 79:11-80:15.)

**Response**: Plaintiff denies knowledge or information regarding this statement.

281.    Plaintiff testified that she did not identify Stanzl or Anthony by name in her survey response in July 2023, nor did Plaintiff identify Nomura's EDO or Global Markets Equities teams. (Pl. Dep. II 586:3-590:4.)

**Response**: Plaintiff does not dispute that she testified that she did not identify Stanzl or Anthony by name in her survey response in July 2023, nor did Plaintiff identify Nomura's EDO or Global Markets Equities teams.

282.    Plaintiff further testified that she did not tell Anthony, Stanzl, Varano, Human Resources, or anyone else at Nomura how she responded to the survey.  (Pl. Dep. II 589:14-590:4.)

**Response**: Admits.

## XII.    PLAINTIFF'S TERMINATION OF EMPLOYMENT FROM NOMURA

283.    In or around May 2023, Nomura's Human Resources department received guidance from senior management in Nomura's Global Markets Division regarding a possible reduction in force.  (Herzig Dep. 170:3-10, 176:14-20; Anthony Dep. 105:10-22.)

**Response**: Plaintiff denies knowledge or information regarding this statement.

70

284.    The reduction in force focused on the lowest performers in the Global Markets Division based on available performance ratings.  (Herzig Dep. 170:3-171:2, Anthony Dep. 117:10-118:2.)

**Response**: Plaintiff denies knowledge or information regarding this statement.

285.    While the reduction in force was originally scheduled to occur in or around June 2023, it was put on hold until July 2023.  (Herzig Dep. 173:10-19; Anthony Dep. 72:17-25, 109:3-12.)

**Response**: Plaintiff denies knowledge or information regarding this statement.

286.    The reduction in force affected employees across Nomura's Global Markets Division.  (Herzig Dep. 175:4-7.)

**Response**: Plaintiff denies knowledge or information regarding this statement.

287.    Herzig was informed of Nomura's decision to terminate Plaintiff's employment in or around May 2023 when the Firm was first discussing a possible reduction in force.  (Herzig Dep. 176:14-20.)

**Response**: Plaintiff denies knowledge or information regarding this statement.

288.    Varano, Witten and Patel informed Herzig of the decision to include Plaintiff in Nomura's reduction in force.  (Herzig Dep. 176:14-177:2; Anthony Dep. 61:22-62:8.)

**Response**: Plaintiff denies knowledge or information regarding this statement.

289.    Varano informed Anthony that Plaintiff was on the list for termination due to her performance and asked whether Anthony had any issues with that decision, which Anthony did not.  (Anthony Dep. 60:14-61:6, 260:11-16.)

**Response**: Plaintiff denies knowledge or information regarding this statement.

290.    Plaintiff was informed of her termination of employment from Nomura on July 28, 2023 during a virtual meeting with Herzig and Anthony.  (Anthony Dep. 65:6-23; Murphy Decl. Ex. BBB, at NOMURA 001506.)

**Response**: Admits.

291.    During the July 28, 2023 virtual meeting, Anthony read from talking points that he received from Nomura's Human Resources department.  (Anthony Dep. 65:6-23, 66:24-67:14, 68:68:7-23; Herzig Dep. 177:19-178:2.)

**Response**: Plaintiff denies knowledge or information regarding this statement.

292.    The July 28, 2023 Talking Points state, in pertinent part:



(Herzig Decl. ¶ 8,  Ex. B, at NOMURA 006046 – NOMURA 006047.)

**Response**: Plaintiff refers to the above-cited exhibit for its contents but does not dispute that the document includes the information stated above**.**

293.    Plaintiff's employment termination from Nomura was effective August 4, 2024. (Pl. Dep. II 643:24-644:9; Murphy Decl. Ex. BBB, at NOMURA 001506.)

**Response**: Admits.

294.    Plaintiff's employment was terminated from Nomura as part of a reduction in force. (Herzig Dep. 173:7-9, 175:14-18; Anthony Dep. 72:17-25, 103:20-25, 104:11-25, 117:10-19.)

**Response**: Plaintiff does not dispute that she was informed at the time of her termination that it was due to a reduction in force but avers that she was never informed that her termination

was due to any performance issues and that after her termination Mr. Muchnik provided her with a letter of recommendation praising her as a quant.  (Feng. Decl ¶94-95) Deposition exhibit 29,

295.    If an employee's employment is terminated in connection with a reduction in force at Nomura, their termination is characterized as a "redundancy."  (Herzig Dep. 172:24-173:6; Anthony Dep. 103:20-104:3.)

**Response**: Plaintiff denies knowledge or information regarding this statement.

296.    Plaintiff's termination of employment from Nomura resulted in a reduced cost for the EDO.  (Anthony Dep. 232:25-233:8; Murphy Decl. Ex. L, at NOMURA 006039.)

**Response**: Plaintiff denies knowledge or information regarding this statement and avers that Anthony testified that after her termination, Nomura subsequently hired Yu Qing Xia ("Xia"), a male, who was transferred from a different group within Nomura into Nomura's EEDO as a Vice President in or around September 2024, and further avers that Xia was paid compensation higher that Plaintiff, specifically, a base salary of ▮▮▮▮▮ and a bonus of ▮▮▮▮▮ for a total compensation of ▮▮▮▮▮ (Anthony Dep. 22:19-23:7, 55:15-18, 249:16-25, 251:10-16, 256:3-6; Gerrald Decl. Ex. BB, at NOMURA 006258)

**Nomura's Reply:** Undisputed that Xia transferred into the EDO in or around September 2024 and that for fiscal year 2024 (April 1, 2023-March 31, 2024)—prior to his transfer to the EDO—his base salary was ▮▮▮▮▮ and he received a bonus of ▮▮▮▮▮ (Herzig Dep. 45:10-12; Gerrald Decl. Ex. BB, at NOMURA 006258.)  Xia and others who were interviewed for roles in the EDO, were not "potential replacements" for Plaintiff, as her role was eliminated.  (Murphy Supp. Decl. Ex. D at Anthony Dep. 247:25-248:25.)  Xia and others were interviewed for projects that were added to the EDO's mandate.  (Murphy Supp. Decl. Ex. D at Anthony Dep. 247:25-248:25.)

297.    Nomura added Laoise Beatty ("Beatty"), a second-year analyst, to the EDO on or around November 30, 2023.   (Anthony Dep. 233:9-234; Murphy Decl. Ex. L, at NOMURA 006039.)

**Response**: Plaintiff denies knowledge or information regarding this statement.

298.    Beatty was significant less expensive than Plaintiff, as Beatty's total compensation was more than ███████ below Plaintiff's.  (Anthony Dep. 234:7-235:7.)

**Response**: Plaintiff denies knowledge or information regarding this statement.

299.    Yu Qing Xia ("Xia"), a Systemic Quant Researcher, transferred into Nomura's EEDO as a Vice President from a different group within Nomura in or around September 2024. (Anthony Dep. 22:19-23:7, 55:15-18, 249:16-25, 251:10-16, 256:3-6.)

**Response**: Plaintiff denies knowledge or information  regarding this statement but does not dispute that Anthony testified as such.

300.    Kartik Arora was hired into Nomura's EDO as an Executive Director in or around November 2024.   (Anthony Dep. 55:15-18, 56:9-25, 255:3-6.)

**Response**: Plaintiff denies knowledge or information  regarding this statement but does not dispute that Anthony testified as such.

## XIII.   PLAINTIFF'S REMAINING ALLEGATIONS

301.    Plaintiff alleges that other members of Nomura's EDO were regularly permitted to work from home without being questioned.  (Pl. Dep. II 413:7-18.)

**Response**: Admits.

302.    However, Plaintiff admits that she does not know what conversations Anthony had with other members of Nomura's EDO about their work-from-home days.  (Pl. Dep. II 390:6-391:4; 413:7-414:3.)

**Response**: Admits.

74

303.    Anthony testified that he had verbal conversations with other employees, including Polgul, regarding the need to be in the office each Tuesday, Wednesday and Thursday.  (Anthony Dep. 188:11-20.)

**Response**: Plaintiff refers to the deposition transcript of Muchnik for the contents of his testimony, but does not dispute that Anthony testified as such.

304.    Plaintiff also alleges that she could not come to the office at 9:00 AM, because her program was running, and she would have had to interrupt her program to come to the office on time.  (Pl. Dep. II 408:5-18.)

**Response**: Admits.

305.    However, Plaintiff admits that she did not inform Anthony that she would need to interrupt her program in order to be in the office by 9:00 AM.  (Pl. Dep. II 408:9-409:7.)

**Response**: Admits.

306.    Plaintiff alleges that she was in compliance with the EDO's in-office policy "other than the few doctors' appointments that she needed to attend."  (Pl. Dep. II 537:21-538:11.)

**Response**: Plaintiff does not dispute the statement that she was in compliance.

307.    However, Plaintiff admits that her office swipe records reveal that she worked from home on 17 different occasions between October 2022 and February 2023.  (Pl. Dep. II 538:25-539:8.)

**Response**: Plaintiff refers to the above-cited office swipe records for their contents and avers that the 17 days does not exclude all of her sick time nor approved absences.  Plaintiff advised Defendant of the following absences: October 18, 2022 for an approved absence due to a water leak; October 25, 2022, approval from Stanzl for time off; November 3, 2022, approved absence by Nomura; December 14, 2022, a doctor's appointment approved by Anthony after Plaintiff

informed him in person and subsequently placed onto her Outlook Calendar based upon Stanzl's instructions for her October 25, 2022 absence; January 11, 2023, absence due to a flight cancelation; January 26, 2023, a doctor's appointment approved by Anthony after Ms. Feng asked him in person; February 9, 2023, a doctor's appointment approved by Anthony in person and acknowledged in a chat on February 10, 2023. (Gerrald Decl. Ex. U at NOMURA 003316; NOMURA 004786; FENG 000089; NOMURA 004984-NOMURA 004985; FENG 000047; and NOMURA 005995).

308.    Plaintiff further alleges that Anthony "started rejecting meetings and invites or failed to show up for meetings that" Plaintiff scheduled.  (Pl. Dep. II 560:11-19.)

**Response**: Admits.

309.    However, Plaintiff admits that Anthony did not avoid meetings with her; rather, Anthony provided Plaintiff with meeting times that worked for him.  (Pl. Dep. II 560:24-563:18; Murphy Decl. Ex. CCC, at NOMURA 004270.)

**Response**: Admits.

310.    Plaintiff also alleges that Anthony told her "not to attend a meeting" that she had "been invited to by" Voynova.  (Pl. Dep. II 564:24-565:5.)

**Response**: Admits.

311.    However, Plaintiff admits that Voynova invited her to the newly structured meeting that Anthony created in 2022 for the IT team only.  (Pl. Dep. II 565:18-566:21.)

**Response**: Admits.

312.    Plaintiff further alleges that Anthony "met with everyone on the team for weekly one-on-one meetings," except for her.  (Pl. Dep. II 566:22-567:7.)

**Response**: Admits.

313.    However, Anthony testified that he did not have regularly scheduled one-on-one meetings scheduled with any of his non-direct reports but that in 2023 he met with Plaintiff more frequently for one-on-ones than any other non-direct reports.  (Anthony Dep. 226:8-25.)

**Response**: Plaintiff refers to the deposition transcript of Anthony for the contents of his testimony but avers that she complained to Anthony that it had been four months since she had her last one-on-one meeting with him.  (Gerrald Decl. Ex. WW, NOMURA 001486-NOMURA 001493) .

**Nomura's Reply:** Nomura admits that in June 2023 Plaintiff complained to Anthony that it had been four months since she had a one-on-one meeting with him (Gerrald Decl., Ex. VV), but disputes the accuracy of Plaintiff's complaint as the record reflects that at a minimum Anthony had a one-one meeting with Plaintiff in March 2023—less than four months earlier. (Pl. Dep. II 478:11-20, 487:3-13.)

314.    Plaintiff admits that she was not one of Anthony's direct reports.  (Pl. Dep. II 567:12-14.)

**Response**:  Admits that she was not one of Anthony's direct reports but avers that she did report to Anthony and had a dotted line to Anthony.  (Pl. Dep. I, 115:6-25).

315.    Plaintiff further alleges that the entire team, except her, was "asked to attend an on-site interview with a potential new analyst."  (Pl. Dep. II 567:23-568:4.)

**Response**: Admits.

316.    However, Plaintiff admits that she does not know the date of the interview or whether she was in the office that day.  (Pl. Dep. II 568:5-17.)

**Response**: Admits.

77

317.    Plaintiff also alleges that she experienced data issues during her tenure with Nomura, which in turn impacted the quality of her projects.  (Pl. Dep. I 266:3-7; Stanzl Dep. 92:23-93:4.)

**Response**: Admits.

318.    However, Plaintiff admits that she was personally responsible for resolving the data quality issues for her own projects at Nomura.  (Pl. Dep. II 511:5-17; Stanzl Dep. 92:23-93:24, 96:8-97:12.)

**Response**: Plaintiff does not dispute that she had responsibility for resolving data quality issues but avers that IT controlled the data she needed for her work and was responsible for data quality issues she had.  (Stanzl Tr. 65:18-66:4).

**Nomura's Reply:** Nomura disputes the assertion that IT controlled the data needed for Plaintiff's project as not supported by the record.  Stanzl testified that IT controlled the data only "to a certain degree" and that senior management—not IT—determined priority of projects (Murphy Supp. Decl. Ex. E at Stanzl Dep. 65:18-21, 98:24-99:13). Plaintiff testified that Varano confirmed that IT did not have the ability to delete the data she needed for her projects.  (Murphy Supp. Decl. Ex. A at Pl. Dep. I 275:21-276:3.)

319.    The fact that Plaintiff was no longer attending meetings with IT after October 2022 did not exempt Plaintiff from the responsibility of resolving her own data quality issues.  (Pl. Dep. II 511:5-17.)

**Response**: Plaintiff does not dispute that she had responsibility for resolving data quality issues but avers that IT controlled the data she needed for her work and was responsible for data quality issues she had.  (Stanzl Tr. 65:18-66:4).

**Nomura's Reply:** Nomura disputes the assertion that IT controlled the data needed for Plaintiff's project as not supported by the record.  Stanzl testified that IT controlled the data only "to a certain degree" and that senior management—not IT—determined priority of projects (Murphy Supp. Decl. Ex. E at Stanzl Dep. 65:18-65:21, 98:24-99:13). Plaintiff testified that Varano confirmed that IT did not have the ability to delete the data she needed for her projects. (Murphy Supp. Decl. Ex. A at Pl. Dep. I 275:21-276:3.)

320.    Plaintiff also testified that the data quality issues she alleged would impact other employees' projects at Nomura, not just hers.  (Pl. Dep. I 266:3-7.)

**Response**: Admits.

321.    Plaintiff is not aware of whether anyone else at Nomura complained to Anthony about alleged data quality issues; nor does she recall other EDO team members discussing the data quality issues.  (Pl. Dep. I 266:8-20.)

**Response**: Admits.


Dated: New York, New York
       June 22, 2026

                         SEYFARTH SHAW LLP

                         By: */s/ Ellen M. Murphy*
                            Ellen M. Murphy
                            Howard M. Wexler
                            Ashley Casey
                            620 Eighth Avenue
                            New York, New York 10018-1405
                            Tel: (212) 218-5500
                            Fax: (212) 218-5526
                            emurphy@seyfarth.com
                            hwexler@seyfarth.com
                            acasey@seyfarth.com

                         *Attorneys for Defendant NOMURA*
                         *SECURITIES INTERNATIONAL, INC.*